UNITED STATES of America,
Appellee,

v.

John DOE.

In the Matter of the Grand Jury Testimony and Contempt of Cynthia
B. SCHWARTZ, Appellant.

No. 663, Docket 72–1209.

United States Court of Appeals,
Second Circuit.

Argued March 9, 1972.

Decided March 28, 1972.

Stay Granted March 31, 1972.
See 92 S.Ct. 1243.

David M. Brodsky, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S.D.N.Y., and John W. Nields, Jr., Asst. U. S. Atty., of counsel), for appellee.

Pierce Gerety, Jr. (Robert Kasanof, and Phylis Skloot Bamberger, Legal Aid Society, New York City, of counsel), for appellant.

Before FRIENDLY, Chief Judge, TIMBERS, Circuit Judge, and JAMESON, District Judge.*

FRIENDLY, Chief Judge:

On January 22, 1972, appellant Cynthia B. Schwartz appeared, pursuant to subpoena, before a grand jury in the Southern District of New York, which was conducting an investigation in regard to possible mail and wire frauds. The Assistant United States Attorney asked her to furnish samples of her writing of the names Cynthia Schwartz, Cynthia B. Brown, Dixbie Management Co., Dixbie Colossal Inc., National Angus of America, and National Beef Corporation. She refused, asserting her privilege against self-incrimination under the Fifth Amendment. On February 2, 1972, Judge Tyler directed her to execute the exemplars and appointed the Legal Aid Society to represent her. After she had again refused, on February 9, she and her counsel appeared before Judge Lasker. Counsel now asserted that the Fourth Amendment required the Government to show the reasonableness of its request. Judge Lasker reserved decision. Prior to another appearance before the judge on February 14, the Assistant, contending that in any event the request for exemplars was reasonable, submitted an affidavit stating that witnesses before the grand jury had indicated there were resemblances between the handwriting on certain exhibits and what they believed to be that of Cynthia B. Schwartz, and that other efforts to obtain specimens of her handwriting had been unsuccessful. Counsel then took the more advanced position that the Government had the burden of showing "probable cause." On February 14, Judge Lasker directed Mrs. Schwartz to furnish the exemplars. When she again refused, on February 17, the judge cited her for civil contempt and sentenced her for thirty days, unless she sooner furnished the exemplars or the grand jury was discharged. However, he stayed the sentence for a week to permit application to this court for a further stay pending appeal. Another panel extended the stay and set the appeal for argument on March 9. After hearing argument we directed that the stay be vacated at 5:00 P.M. on March 13; this has been extended by the Supreme Court until its further order. We affirm the judgment of the district court.

Although appellant now makes no claim under the Fifth Amendment and relies solely on the Fourth, it is important for the latter purpose to underscore that no basis for a Fifth Amendment claim exists. Gilbert v. California, 388 U.S. 263, 265–67, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), held that the furnishing of handwriting exemplars did not constitute testimony within the protection of the self-incrimination clause. Combination of that holding with United States v. Wade, 388 U.S. 218, 222–23, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), leads inevitably to the conclusion that this is true even when a witness is asked to furnish specimens of his writing of names or words that had been used in the commission of a crime. We so held in United States v. Doe (Devlin), 405 F.2d 436, 438–39 (2 Cir. 1968). Furthermore, whereas *Gilbert* and *Wade* had been concerned only with claims that the compelled furnishing of exemplars constituted compulsory self-incrimination and consequent error, *Doe* added the scarcely surprising gloss that, since no privilege existed, refusal to furnish

* Of the United States District Court for the District of Montana, sitting by designation.

handwriting exemplars justified a moderate sentence for civil contempt.

Appellant's argument is that the use of process to compel the furnishing of handwriting (or voice) exemplars to a grand jury constitutes a search or seizure within the Fourth Amendment which requires a preliminary showing of probable cause to believe that the witness' handwriting (or voice) resembles that of a person whom the Government has probable cause to believe has committed a crime.[1]

Evaluation of her claim demands inquiry into the scope of the Fourth Amendment's protection and its relationship to and limitations upon the historic exercise of the grand jury's inquisitorial function. Despite appellant's contention that the Fourth Amendment creates a *per se* prohibition against compelled production, absent probable cause, of incriminating evidence not privileged by the Fifth Amendment, and the Government's argument of *per se* inapplicability of the Fourth Amendment to grand jury process except as a limitation upon compelled production too sweeping in scope, neither the language of the Amendment nor the history of its application supports either of these *per se* rules.

The Fourth Amendment, in relevant part, states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." Exemplars, whether handwriting or voice, if covered at all, must be considered elements of "persons" rather than "houses, papers, and effects." Cf. Schmerber v. California, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L. Ed.2d 908 (1966). Decisions dealing with "interferences with property relationships or private papers," *Id.* at 767–68, 86 S.Ct. at 1834, thus are marginally relevant at best. The Court has had relatively little occasion to discuss the extent of the protection given to the person by the Fourth Amendment save in the context of arrests. Perhaps the most useful statement is that of the Chief Justice in Terry v. Ohio, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), borrowing from Mr. Justice Harlan's concurring opinion in Katz v. United States, 389 U.S. 347, 360, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967): "[W]herever an individual may harbor a reasonable 'expectation of privacy,' . . . he is entitled to be free from unreasonable governmental intrusion." Terry v. Ohio, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873 (1968).

It is too plain to demand extended argument that a "reasonable expectation of privacy" does not relieve of the requirement of appearance before a grand jury or other properly constituted tribunal, although this does interfere with an individual's ability to do exactly what he does or does not please. In United States v. Bryan, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950), relating to testimony before a Congressional committee, the Court quoted with approval Dean Wigmore's statement that, "For more than three centuries it has now been recognized as a fundamental maxim that the public (in the words sanctioned by Lord Hardwicke) has a right to every man's evidence," 7 Wigmore, Evidence (3d ed.) § 2192. Still more pertinently the Court observed in Blair v. United States, 250 U.S. 273, 280–281, 39 S.Ct. 468, 470, 63 L.Ed. 979 (1919):

At the foundation of our Federal government the inquisitorial function of the grand jury and the compulsion of witnesses were recognized as incidents of the judicial power of the United States. . . . [I]t is clearly recognized that the giving of testimony and the attendance upon court or grand jury in order to testify are public duties which every person within the ju-

---

[1]. At least this is our best understanding of what counsel means by "probable cause" in this context; appellant's brief seems to take varying positions on this point.

risdiction of the government is bound to perform upon being properly summoned . . . .

No preliminary showing of need or relevancy is required before a person may be subpoenaed to appear before a grand jury. Indeed, the Seventh Circuit, whose decision in In re Dionisio, 442 F. 2d 276 (1971), constitutes appellant's chief reliance, has recently so held. Fraser v. United States, 452 F.2d 616 (7 Cir. 1971). Even the fact that the witness may himself be the subject of the grand jury investigation does not entitle him to refuse to *appear*. See United States v. Scully, 225 F.2d 113 (2 Cir.), cert. denied, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788 (1955); United States v. Winter, 348 F.2d 204, 207–08 (2 Cir.), cert. denied, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1955). The distinction between the compulsion exerted by a subpoena and detention by law enforcement officers is far from being a mere matter of words. The latter is abrupt, is effected with force or the threat of it and often in demeaning circumstances, and, in the case of arrest, results in a record involving social stigma. A subpoena is served in the same manner as other legal process; it involves no stigma whatever; if the time for appearance is inconvenient, this can generally be altered; and it remains at all times under the control and supervision of a court.

This case thus differs fundamentally from Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); Terry v. Ohio, *supra*; and Schmerber v. California, *supra*, the Supreme Court decisions most strenuously pressed upon us. In each of those cases the Court found a police-citizen encounter which amounted to a "seizure" of the person within the meaning of the Fourth Amendment, although on the facts not an unreasonable one. In *Terry* and *Schmerber* the initial encounters were followed by police practices which themselves constituted "searches," although these were again held to be reasonable —in *Terry*, the pat-down of the suspect's clothing for concealed weapons and in *Schmerber*, the extraction of blood from the suspect's arm. In *Davis* it was the initial detention that was found to violate the Fourth Amendment and thus to invalidate the use at trial of Davis' fingerprints taken while he was unlawfully detained. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Here there was no illegality in the compelled appearance.

■ On the other hand, the fact that compulsory appearance before a grand jury is not a seizure of the person does not lead automatically to the conclusion that nothing the grand jury may require could constitute a search. The test must be whether the requirement invades a "reasonable expectation of privacy." Presumably no one would contend that requiring a grand jury witness to remove a mask, in order to permit comparison with surveillance photographs, constituted a "search"; there is no "reasonable expectation of privacy" about one's face. On the other side of the line, according to *Schmerber*, is a blood test; so perhaps, although we need not decide the point, would be a demand for the display of identifying characteristics such as scars or birthmarks on parts of the body not normally exposed.[2] Handwriting and voice exemplars fall on the side of the line where no reasonable expectation of privacy exists. Except for the rare recluse who chooses to live his life in complete solitude, in our daily lives we constantly speak and write, and while the content of a communication is entitled to Fourth Amendment protection, Katz v. United States, *supra*, the underlying identifying characteristics—the constant factor throughout both public and private communications—are open for all to see or hear. There is no basis for constructing

---

2. Some of the examples of more intrusive examination of the body cited in 8 Wigmore, Evidence § 2216 at 166–67 n. 3 (McNaughton rev. 1961) would more clearly be protected in the absence of a preliminary showing of need.

a wall of privacy against the grand jury which does not exist in casual contacts with strangers. Hence no intrusion into an individual's privacy results from compelled execution of handwriting or voice exemplars; nothing is being exposed to the grand jury that has not previously been exposed to the public at large. When appellant's case is properly analyzed, Davis v. Mississippi becomes an authority for the Government rather than against it. For the Court there said that fingerprinting, surely more nearly private than exemplars of the voice or handwriting, "involves none of the probing into an individual's private life and thoughts that marks an interrogation or search." 394 U.S. at 727, 89 S.Ct. at 1398.

Appellant argues that to permit the prosecutor to accomplish through use of the grand jury what he might not be able to accomplish without it would subvert the purposes underlying the Fourth Amendment. Aside from the fact, as previously indicated, that the purposes underlying the Fourth Amendment are not offended by what has here been requested, her argument overlooks an important aspect of the grand jury's function—that of acting as a protective buffer between the accused and the prosecutor. The grand jury was regarded by the founders, not as an instrument of oppression but as a safeguard of liberty so important as to be preserved in the Fifth Amendment. In Ex Parte Bain, 121 U.S. 1, 10–11, 7 S.Ct. 781, 30 L.Ed. 849 (1887), Mr. Justice Miller quoted with approval from a charge given by Mr. Justice Field, 2 Sawyer 667:

> And in the struggles which at times arose in England between the powers of the king and the rights of the subject, it often stood as a barrier against persecution in his name; until, at length, it came to be regarded as an institution by which the subject was rendered secure against oppression from unfounded prosecutions of the crown. In this country, from the popular character of our institutions, there has seldom been any contest between the government and the citizen which required the existence of the grand jury as a protection against oppressive action of the government. Yet the institution was adopted in this country, and is continued from considerations similar to those which gave to it its chief value in England, and is designed as a means, not only of bringing to trial persons accused of public offences upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it comes from government, or be prompted by partisan or private enmity.

In Stirone v. United States, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960), Mr. Justice Black said that

> The very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses charged by a group of fellow citizens acting independently of either prosecuting attorney or judge.

In order for the grand jury to function, it must have the cooperation of citizens in producing evidence, and of doing that quickly, subject, of course, to the limits imposed by the Fifth Amendment privilege. The safeguards built into the grand jury system, such as enforced secrecy and use of court process rather than the constable's intruding hand as a means of gathering evidence, severely limit the intrusions into personal security which are likely to occur outside the grand jury process. To be sure, on occasion, a grand jury may overstep bounds of propriety either at its own or the prosecutor's instance, and conduct an investigation so sweeping in scope and undiscriminating in character as to offend other basic constitutional precepts. When this occurs courts are not without power to act, see, e. g., Hale v. Henkel, 201 U.S. 43, 65, 26 S.Ct. 370, 50 L.Ed. 652 (1906); Blair v. United States, supra, 250 U.S. at 281, 39 S.Ct. 468, 63 L. Ed. 979. But there is no indication that anything of the kind was involved here. Apart from such cases, when the grand

jury has engaged in neither a seizure nor a search, there is no justification for a court's imposing even so apparently modest a requirement as a showing of "reasonableness"—with the delay in the functioning of the grand jury which that would inevitably entail.

We recognize that a different view has been taken by the Seventh Circuit in In re Dionisio, *supra*, 442 F.2d 276, which was followed in In re Mara, 454 F.2d 580 (7 Cir. 1971). With respect, neither the reasoning nor the authorities cited are persuasive to us. The court stated that "compelling a person to furnish an exemplar of his voice is as much within the scope of the Fourth Amendment as is compelling him to produce his books and papers." 442 F.2d at 279. But, aside from the fact that, as already pointed out, those decisions involving "interferences with property relationships or private papers," Schmerber v. California, *supra*, 384 U.S. at 767, 86 S. Ct. at 1834, 16 L.Ed.2d 908, are marginally relevant at best, the Fourth Amendment has not been held to forbid compulsory production of books and papers before a grand jury save in two types of situations: One is stated in Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), where the majority, over the dissent of Mr. Justice Miller and Chief Justice Waite, held that compulsory production of incriminating documents before a grand jury violated not only the self-incrimination clause of the Fifth Amendment, as all the Justices agreed, but the Fourth as well. While Dean Wigmore believed that "the Supreme Court has to a large extent recanted that part of the Boyd dicta which would apply the Fourth Amendment to an order to produce a document, properly a Fifth Amendment concern," 8 Wigmore, Evidence § 2264, at 381–84, n. 4 (McNaughton rev. 1961), we need not consider this, since, as developed at the outset, Mrs. Schwartz was not directed to produce anything that was testimonial in nature. The other situation is reflected in the statement in Hale v. Henkel, *supra*, 201 U.S. at 76, 26 S.Ct. at

379, 50 L.Ed. 652, that a grand jury subpoena duces tecum too sweeping in its terms "may constitute an unreasonable search and seizure within the Fourth Amendment." We note that in Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208, 66 S.Ct. 494, 90 L.Ed. 614 (1941), the Court in referring to the problem, spoke of "the Fourth [Amendment], if applicable," which might mean that protection against too sweeping subpoenas was furnished rather by the due process clause. This likewise need not be considered, since no issue of unreasonable scope was here presented. The authorities relied upon in *Dionisio* were Boyd v. United States, *supra*; Hale v. Henkel, *supra*; and Davis v. Mississippi, *supra*. As previously indicated, we do not believe that those cases lead to the result the court reached; indeed, as indicated, we believe Davis v. Mississippi points exactly the other way.

While the Eighth Circuit has also recently held that a demand by law enforcement officers for handwriting exemplars is subject to the Fourth Amendment, though under a standard of less than probable cause for an arrest, United States v. Harris and United States v. Long, 453 F.2d 1317, (8 Cir. 1972), those cases dealt with action by police— in one instance in the defendant's home, in the other while he was under arrest —not pursuant to a subpoena before a grand jury. While the Eighth Circuit concluded that, in addition to the police-citizen encounter being a seizure, the taking of a handwriting exemplar was itself a search, we find the court's reasoning unconvincing on this point. In support of its conclusion the court in *Harris* pointed to proposed new Rule 41.1, Nontestimonial Identification, of the Federal Rules of Criminal Procedure. See Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, 52 F.R.D. 409, 462 (1971). As the Advisory Committee Note following the rule indicates, this proposed rule "provides a procedure by which a federal magistrate may issue an

order authorizing a nontestimonial identification procedure" by law enforcement officers. 52 F.R.D. at 467. The proposed rule specifically takes account of the decision in Davis v. Mississippi, *supra*, with respect to the fruits of unlawful detention and, in accordance with a suggestion in that opinion, provides for nontestimonial compulsory identification before law enforcement officers on a showing less than the probable cause required to make an arrest. Neither the proposed rule nor the Advisory Committee Note implies that the Government must make a preliminary showing before a grand jury witness can be required to give a moderate number of handwriting exemplars. The Advisory Committee Note, in fact, makes reference to our decision in United States v. Doe (Devlin), *supra*, 405 F.2d 436, and states: "Compelling a suspect to submit to a nontestimonial identification procedure has been sustained when it is accomplished by means of a grand jury subpoena." 52 F.R.D. at 469. We find nothing inconsistent with our holding today in the proposed rule which merely recognizes the applicability of the Fourth Amendment to nontestimonial identification procedures when the initial police-citizen encounter places this within the protection of that Amendment.

If, contrary to our view, any showing is needed before a grand jury witness may be required to furnish handwriting exemplars, the test cannot be so severe as appellant urges. A determination that there are sufficient grounds for believing a crime has been committed and that the defendant has committed it to require him to stand trial, is the end result of a grand jury's investigation in cases where it returns a true bill. The Government can no more be required to meet that test with respect to a witness at a preliminary stage in that investigation than it would before calling a witness at the trial itself. All this was clearly recognized in Hale v. Henkel, *supra*, 201 U.S. at 65, 26 S.Ct. 370, 50 L. Ed. 652, and in Blair v. United States, *supra*, 250 U.S. at 282, 39 S.Ct. 468, 63 L.Ed. 979. Indeed, there may well be instances where the Government's purpose in seeking handwriting exemplars is not to show that the witness has committed a crime but rather to show that he has not, e. g., when the true suspect says that incriminating writings were the work of the witness rather than himself.[3] Moreover, we have recently observed that the grand jury's scope of inquiry "is not limited to events which may themselves result in criminal prosecution, but is properly concerned with any evidence which may afford valuable leads for investigation of suspected criminal activity during the limitations period." United States v. Cohn, 452 F. 2d 881, 883 (2 Cir. 1971). The Seventh Circuit has recognized that when a court order is involved, the test is merely one of "reasonableness." See In re Mara, *supra*, fn. 3. The prosecutor's affidavit that witnesses before the grand jury had indicated resemblances between Cynthia Schwartz' handwriting and material pieces of evidence in the grand jury's fraud investigation, and that definitive exemplars of her handwriting could not be otherwise obtained, would suffice to meet whatever slight burden of making a preliminary showing the Government might have under any view. However, for the reasons previously given, we hold that, with respect to a reasonable number of handwriting exemplars of a grand jury witness, it has none.

Affirmed.

---

3. While normally such a witness would happily comply, cases are not unknown where an innocent third party has accepted "suggestions" that he "take the rap."