**In re SUBPOENAS TO LOCAL 478, INTERNATIONAL UNION OF OPERATING ENGINEERS AND BENEFIT FUNDS, Appellants.**

**No. 599, Docket 82–6163.**

United States Court of Appeals, Second Circuit.

Argued Dec. 13, 1982.

Decided May 19, 1983.

Meskill, Circuit Judge, concurred in part and dissented in part and filed opinion.

J. Daniel Sagarin, Hurwitz & Sagarin, P.C., Milford, Conn. (William B. Barnes, Milford, Conn., of counsel), for appellant Local 478, IUOE.

Bernard J. Panetta, II, Sp. Strike Force Atty., U.S. Dept. of Justice, Washington, D.C. (Alan H. Nevas, U.S. Atty., D. Conn., New Haven, Conn.), for appellee U.S.

Before OAKES, VAN GRAAFEILAND and MESKILL, Circuit Judges.

OAKES, Circuit Judge:

This is an appeal from denial of motions brought by a union challenging a Special Grand Jury investigation of it and its benefit funds. The Union alleges governmental harassment through the issuance and administration of multiple subpoenas. The Union sought to terminate the investigation, to quash subpoenas ad testificandum issued to sixteen clerical employees, and to order an inventory and return of original documents retained by the Special Grand Jury. The United States District Court for the District of Connecticut, Ellen Bree Burns, Judge, held that while the Union did have standing, it had failed to sustain its burden of overcoming the presumption of regularity attaching to grand jury proceedings. She found no reason to take the "unprecedented and extraordinary" action of terminating the grand jury proceedings even if the court had supervisory powers to do so. The court further held that it would decline to quash the subpoenas ad testificandum because there was a lack of showing that the investigation was undertaken in bad faith, that the subpoenas were intended to harass the Union, or that the information sought was wholly irrelevant to the investigation. She accepted the Union's inventory of documents in the Grand Jury's possession, but declined to order their return because the Government substantiated the Grand Jury's need to retain them. The Union appealed Judge Burns's order on each of its motions. We find that denial of the Union's motion for return of documents is appealable as a final order, and we affirm as to it. The district court's denial of the remaining motions to terminate the investigation and to quash subpoenas ad testificandum issued to clerical employees, however, does not constitute an appealable order. Because the Union has not alleged facts bringing it within the narrow group of exceptions to the final order rule, we dismiss the appeal from that denial.

1. *The Investigation*

Successive federal grand juries in Connecticut have been investigating possible

embezzlement and record-keeping violations of Local 478 of the International Union of Operating Engineers (the Union), and its five welfare and benefit funds. A United States Department of Justice Strike Force (the Government) presented testimony and material for the Special Grand Jury's consideration. The district court had been required to mediate between the Union and the Government on several occasions prior to the filing of the motions involved in this appeal, taken during the ongoing grand jury investigation. Here, as in the district court, the Union and the Government present quite different pictures of what, why, and how the documents were sought.

Counsel for the Union describes thirty-five subpoenas issued over a two year period to the Union and its Welfare Fund, Pension Fund, Officers and Employees Pension Fund, Apprenticeship Skills Training Fund, and Supplemental Unemployment Benefit Fund, all located at the Union headquarters in Hamden, Connecticut. Nineteen subpoenas were issued to officers and custodians of records to produce cash receipt and disbursement journals, cancelled checks, and the like. The Union describes these subpoenas as abusive because they were overbroad, duplicative, and administratively burdensome. It complains, for example, that the Government demanded production of 120,000 checks in nine days without specifying month, year, and account, and unnecessarily retained original ledgers and business-keeping records without even providing the Union with receipts. When custodians claimed a privilege not to authenticate certain records, the Government served subpoenas on sixteen clerical personnel. Service on a Friday required appearance to testify the following Wednesday, and, the Union asserts, "frightened the clerical personnel. All work stopped." Cumulatively, "the Government's abuse of Grand Jury process impaired the function of the Local and the Funds by taking people away from work, scattering important documents, and destroying morale." Union Brief at 17.

The Government, on the other hand, describes a good faith investigation of possible federal law violations—embezzlement from union funds, 29 U.S.C. § 501(c), and violations of restrictions on payments and loans to labor organizations, 29 U.S.C. § 186—that involved precisely the subpoenaed records. In light of the custodian's assertion of a Fifth Amendment privilege not to authenticate fund records, the Government subpoenaed secretaries and file clerks who regularly worked with the records and presumably could authenticate them. Because the clerical employees would not have the same fiduciary relationship to the Union and its Funds as the subpoenaed officers, the Government believed there was little likelihood that they could incriminate themselves, and that the workers who did the actual posting could testify as to the nature of their work and their knowledge of the documents. Government's Omnibus Response to Union Motion at 9.

## 2. Appeal of Orders Relating to Ongoing Grand Jury Investigations

 A properly taken appeal gives this court a power to review, not a power to intervene. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). Our jurisdiction under 28 U.S.C. § 1291 encompasses only "final decisions of the district courts." The finality requirement of § 1291 "embodies a strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." *United States v. Nixon*, 418 U.S. 683, 690, 94 S.Ct. 3090, 3098, 41 L.Ed.2d 1039 (1974). *See also Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981) (permitting piecemeal appeals would undermine the independence of the district judge); *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 170, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974) (rule promotes efficient judicial administration); *Cobbledick v. United States*, 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940) (rule accords with policy against obstruction, harassment and cost of successive appeals).

In applying the finality principle to orders relating to ongoing grand jury proceedings, courts have repeatedly held that orders denying motions to quash subpoenas are not final orders and therefore are not appealable. *Cobbledick v. United States,* 309 U.S. at 327–28, 60 S.Ct. at 542–543. Balancing the public interest in safeguarding grand jury proceedings from undue interruption and a witness's interest in asserting a right not to comply with a grand jury request, the Supreme Court has concluded that the availability of court review of the claim in a contempt proceeding " 'is adequate for [the witness's] protection without unduly impeding the progress of the case.' " *Cobbledick v. United States,* 309 U.S. at 327, 60 S.Ct. at 542, *quoting Alexander v. United States,* 201 U.S. 117, 121, 26 S.Ct. 356, 358, 50 L.Ed. 686 (1906).

But the underlying purposes of the finality rule in some cases require deviation from appellate review limited to the contempt scenario. *United States v. Nixon,* 418 U.S. at 691, 94 S.Ct. at 3099. Thus, the Supreme Court has given a practical rather than a technical construction to the final order rule. *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. at 546, 69 S.Ct. at 1225. Justice Frankfurter, writing for the Court in *Cobbledick, supra,* while stressing the historic character of finality as a condition of review,[1] acknowledged that it would be inappropriate to apply the rule "when observance of it would practically defeat the right to any review at all" of a constitutional claim. 309 U.S. at 324–25, 328–29, 60

S.Ct. at 540–541, 542–543 (footnote omitted).[2] Thus, when a person has been subpoenaed to produce documents that are the property of a third party who claims that the material is immune from production, the third party has been permitted to appeal because it is unlikely that the witness would risk a contempt citation in order to create an opportunity for review of the third party's claim of privilege. *Perlman v. United States,* 247 U.S. 7, 12–13, 38 S.Ct. 417, 419–420, 62 L.Ed. 950 (1918) (documents implicating privilege against self-incrimination). *Accord, In re Katz,* 623 F.2d 122, 124 (2d Cir.1980) (privilege against self-incrimination); *In re Grand Jury Proceedings (FMC Corp.),* 604 F.2d 798, 801 (3d Cir.1979) (attorney-client privilege); *In re Horowitz,* 482 F.2d 72, 82 (2d Cir.) (privilege against self-incrimination), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973).

■ Analogously, in order to protect a testimonial privilege, a third party may also in some circumstances seek review of a subpoena directing another person to appear and testify. *Gravel v. United States,* 408 U.S. 606, 608 n. 1, 92 S.Ct. 2614, 2618 n. 1, 33 L.Ed.2d 583 (1972) (Senator asserting Speech and Debate Clause privilege moved to quash subpoena directing aide's testimony, and then for appellate review). A final relevant category of appealable interlocutory orders involves motions for return of seized property where there is no pending criminal prosecution. *DiBella v. United States,* 369 U.S. 121, 131–32, 82 S.Ct. 654, 660–661, 7 L.Ed.2d 614 (1962).[3]

---

**1.** Restricting appellate review to final decisions has been a dominant rule of procedure since the Judiciary Act of 1789, Ch. 20, §§ 21, 22, 25, 1 Stat. 73, 83, 84, 85.

**2.** When the Court articulated a test for appealable collateral orders in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), it cited *Cobbledick's* discussion of *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), as authority for an exception to the finality requirement "in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case

is adjudicated." 337 U.S. at 546, 69 S.Ct. at 1226. *See also Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468–69, 98 S.Ct. 2454, 2457–2458, 57 L.Ed.2d 351 (1978) (discussing collateral order exception to § 1291 final order requirement).

**3.** Another category of collaterally reviewable orders in an ongoing grand jury investigation, not implicated in the present case, are cases where "the traditional contempt avenue to immediate appeal is peculiarly inappropriate due to the unique setting." *United States v. Nixon,* 418 U.S. 683, 691, 94 S.Ct. 3090, 3099, 41 L.Ed.2d 1039 (1974) (requiring President to seek review via contempt would be unnecessary constitutional confrontation between judiciary and executive).

■ Thus, the Supreme Court has drawn a narrow range of exceptions to the statutory finality rule. Merely asserting that compliance will create a substantial burden unless immediate review of a district court order is available will not justify departure from the finality-contempt requirement. *United States v. Ryan*, 402 U.S. 530, 532, 91 S.Ct. 1580, 1581, 29 L.Ed.2d 85 (1971). Further, merely asserting that a ruling is or may be effectively unreviewable absent immediate appeal is not a sufficient concrete assertion of fundamental rights the legal and practical value of which will be destroyed if not vindicated on collateral review. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. at 376–77, 101 S.Ct. at 674–675.[4]

### 3. *The Motion to Terminate*

■ Analyzing the orders presented to us for review within this framework, we have no difficulty concluding that the order denying the Union's motion to terminate the Special Grand Jury investigation is not a final order and hence is not appealable. The Union may obtain appellate review of its claim of harassment by refusing to cooperate with the continuing investigation, thus placing itself in contempt.

Because courts have allowed immediate government appeal from orders effectively terminating grand jury investigations, the Union argues that the order denying its motion to terminate should similarly be appealable. *In re Grand Jury Proceedings (U.S. Steel-Clairton Works)*, 525 F.2d 151, 155, 156 n. 20 (3d Cir.1975), for example, permitted an appeal from a district court order staying indefinitely a grand jury proceeding. The court reasoned that an indefinite stay had the practical effect of dismissal, precluding investigation of possible criminal violations of the Clean Air Act. The order was "final" and reviewable because the government could not, by resistance, submit to adjudication of contempt to obtain appellate review. The Union in this case is, in effect, asking for symmetry, but the Third Circuit's reasoning demonstrates why symmetry is irrelevant. Here, the Union *can* seek review by standing in contempt; when this mechanism is available, the Supreme Court's balancing test tells us that it is a sufficient procedure for appeal. *Cobbledick*, 309 U.S. at 327, 60 S.Ct. at 542.

■ While the duty to appear before a grand jury may burden, embarrass, or injure social and economic status, *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974), the individual interest will usually yield to society's interest in a thorough and extensive investigation. *Branzburg v. Hayes*, 408 U.S. 665, 701–02, 92 S.Ct. 2646, 2666–2667, 33 L.Ed.2d 626 (1972).[5] In the federal

---

4. But although these are narrowly defined exceptions to the statutory finality rule, a party who does not fall within the class but nonetheless asserts a colorable claim of irreparable damage has other remedies. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 n. 13, 101 S.Ct. 669, 676 n. 13, 66 L.Ed.2d 571 (1981). These could include a garden variety motion for a protective order, or a motion for reconsideration. The party may seek to have the question certified for interlocutory review under 28 U.S.C. § 1292(b). This circuit has suggested that § 1292(b) review might sometimes be appropriate. *In re Grand Jury Subpoena (Doe)*, 546 F.2d 498, 501–02 (2d Cir.1976). *But see In re April 1977 Grand Jury Subpoenas (General Motors Corp.)*, 584 F.2d 1366 (6th Cir.) (en banc) (rejecting § 1292(b) review of denial of motion to disqualify attorney for conflict of interest), *cert. denied*, 440 U.S. 934, 99 S.Ct. 1277, 59 L.Ed.2d 492 (1978). *See generally* Note, Appealability of Orders Relating to Ongoing Grand Jury Proceedings, 92 Harv.L.Rev.

931 (1979); Note, Interlocutory Appeals in Federal Courts Under 28 U.S.C. § 1292(b), 88 Harv.L.Rev. 607 (1975). Additionally, the party could seek a writ of mandamus, *In re Grand Jury Subpoenas, April 1978, at Baltimore*, 581 F.2d 1103, 1106–07 (4th Cir.1978), *cert. denied*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979), or move to dismiss the indictment, *United States v. Udziela*, 671 F.2d 995, 998–99 (7th Cir.) (citing cases), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2964, 73 L.Ed.2d 1353 (1982).

5. The individual interest yields until that point where the grand jury's request confronts a witness's valid constitutional, statutory, or common law privilege, or constitutional right. *United States v. Calandra*, 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). *See also Branzburg v. Hayes*, 408 U.S. 665, 707–08, 92 S.Ct. 2646, 2669–2670, 33 L.Ed.2d 626 (1972) (subpoena power may not be used for harassment of news reporters rather than law en-

scheme of criminal indictment, entities, as well as individuals, are required to give testimony and attend upon the grand jury as a public duty, *Blair v. United States,* 250 U.S. 273, 281, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919), and courts will not lightly interrupt ongoing grand jury proceedings.

Congressional action provides further support for not permitting appeal of this interlocutory order denying the motion to terminate. The inquiry giving rise to the complaints before us is being undertaken by a Special Grand Jury, a body created under the Organized Crime Control Act, Pub.L. No. 91–452, § 101, 84 Stat. 922, 923 (1970) (codified at 18 U.S.C. §§ 3331–34 (1976)). A stated purpose of the Act was "to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process." 84 Stat. 923. The first such tool was the Special Grand Jury. These Special Grand Juries sit for eighteen month terms in populous judicial districts,[6] or on certification by the Attorney General that criminal activity necessitates a Special Grand Jury. 18 U.S.C. § 3331(a). They may return indictments, or simply report to the court regarding organized crime conditions in the district. 18 U.S.C. § 3333(a)(2). In this case, a Special Grand Jury was investigating possible violations of 29 U.S.C. § 501(c) (relating to embezzlement from union funds) and 29 U.S.C. § 186 (dealing with restrictions on payments and loans to labor organizations). Congress specifically included both these criminal provisions in its definition of "racketeering activity" in the Organized Crime Control Act. 18 U.S.C. § 1961(1)(C). In short, we would be reluctant to impede an ongoing Special Grand Jury investigation not only because of the grand jury's historic independence, but also because Congress has enacted a multifaceted statute in which the investigative grand jury is an essential component tasked with "inquir[ing] into offenses against the criminal laws of the United States alleged to have been committed within that district," 18 U.S.C. § 3332(a), and in particular into forms of "social exploitation" where "money and power are . . . used to infiltrate and corrupt legitimate business and labor unions." 84 Stat. 923.

As the Supreme Court has reminded us, "the finality requirement embodied in § 1291 is jurisdictional in nature. If the appellate court finds that the order from which a party seeks to appeal does not fall within the statute, its inquiry is over." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. at 379, 101 S.Ct. at 676.[7] Judge Burns's order denying the motion to terminate the Special Grand Jury investigation is not a final order, and is not appealable, and we therefore dismiss that portion of the present appeal without inquiry into the merits.

### 4. The Motion to Quash

The issue presented by the Union's appeal of Judge Burns's denial of the motion to quash subpoenas ad testificandum addressed to sixteen clerical employees has somewhat different dimensions.[8] We hold

---

forcement); *Blair v. United States,* 250 U.S. 273, 281, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919) (subpoena power may not invade privilege against self-incrimination); *Hale v. Henkel,* 201 U.S. 43, 76, 26 S.Ct. 370, 379, 50 L.Ed. 652 (1906) (subpoena invalid if "far too sweeping" in scope as to be reasonable within meaning of Fourth Amendment); *United States v. Doe,* 457 F.2d 895, 899 (2d Cir.1972) (courts have power to act when subpoenas are "so sweeping in scope and undiscriminating in character as to offend other basic constitutional precepts"), *cert. denied,* 410 U.S. 941, 93 S.Ct. 1376, 35 L.Ed.2d 608 (1973).

6. The statute mandates Special Grand Juries in judicial districts containing more than four million inhabitants. 18 U.S.C. § 3331(a).

7. In *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), the United States as amicus curiae challenged petitioner's standing to attack the order denying a motion to disqualify counsel in a civil case. Having concluded that there was no appellate jurisdiction, the Court did not address the standing issue. *Id.* at 379 n. 14, 101 S.Ct. at 676 n. 14.

8. We note at the outset that we have considered whether this issue is moot and thus nonjusticiable. The court did not enter a stay pending appeal, and we understand that some

that the Union does not have standing as a third party to appeal the order.

 It is true that the Union does not have the option of refusing to comply with the subpoenas, which are not addressed to the Union or its officers, and seeking review of the merits of its claim in a contempt proceeding. It is also true that the clerical employees to whom the subpoenas are addressed are not likely to risk contempt in order to provide their employer with an opportunity for review. The Union would have us inquire no further, urging us to read the third party standing cases as mandating an exception to the final order requirement whenever an affected party cannot seek review of its claim through a contempt proceeding. Our review of the Supreme Court's discussion of this issue in the grand jury context, however, does not permit us to draw the exception to the rule with such a broad brushstroke. The principled balance struck by the *Cobbledick* Court acknowledges the standing of a third party to seek immediate review when the technical observance of the final order rule would defeat the right to any review at all of a constitutional claim. 309 U.S. at 324–25, 328–29, 60 S.Ct. at 540–541, 542–543. Standing to pursue an interlocutory appeal has been granted when the third party claimed a constitutional privilege in documents in the hands of a subpoenaed witness, *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918) (privilege against self-incrimination), or testimony, *Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972) (privilege under Speech and Debate Clause). The third party also has standing to appeal from an interlocutory order that would effectively negate a valid statutory or common law privilege. *In re Grand Jury Proceedings (FMC Corp.),* 604 F.2d at 801 (attorney-client privilege); *see also Blair v. United*

*States,* 250 U.S. at 281, 39 S.Ct. at 471 ("some confidential matters are shielded from considerations of policy"). These cases require us to grant third party standing to pursue an immediate appeal when we find two conditions. First, the order appealed from must be effectively unreviewable absent an immediate appeal. Second, the order must affect fundamental rights whose legal and practical value will be destroyed if not vindicated on collateral review.

[11] Here, the Union does not assert a constitutional, statutory, or common law privilege. Clearly, the subpoenas demand only testimony, not the production of documents.[9] There is no issue of self-incrimination, attorney-client privilege, or the like. The Union's claim is that it has suffered harassment sufficient to constitute abuse of Grand Jury process. Standing to pursue this claim on appeal is predicated on a property interest in employees' time and attention and on irremediable disruption of its business. To stretch the Court's holdings on the third party exception to encompass this amorphous assertion of standing to appeal an interlocutory order would swallow the rule and disrupt the balance struck by the Court to preserve both fundamental rights and effective grand jury investigations.

The Union relies on *In re Matter of Grand Jury Applicants (C. Schmidt & Sons, Inc.),* 619 F.2d 1022 (3d Cir.1980), to establish its standing to appeal the order. While it is true that the Third Circuit granted standing to appeal in part because the employer had a contractual property interest in employee services, and was being deprived of employee time and effort by subpoenas directing employees to testify, the court additionally based its standing deter-

---

of the employees have already given their testimony. However, the issue is certainly capable of repetition. *Moore v. Ogilvie,* 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969).

9. Procedurally, we note that the Federal Rules distinguish subpoenas to testify and subpoenas to produce documents. A person served with

the latter may move to quash or modify the subpoena "if it is unreasonable and oppressive." Fed.R.Civ.P. 45(b); Fed.R.Crim.P. 17(c) (move to quash or modify subpoena for production of documentary evidence and of objects "if compliance would be unreasonable or oppressive.").

mination on the employer's allegations that the grand jury, investigating "short-fill" bottles, was not investigating possible violations of federal law at all, but was in fact investigating solely for the purpose of harassment. *Id.* at 1024, 1026–27. The Union employer in the present case, of course, raises no issue of abuse of grand jury process in the sense of the invalidity of the grand jury inquiry. *See, e.g., Hale v. Henkel,* 201 U.S. 43, 65, 26 S.Ct. 370, 375, 50 L.Ed. 652 (1906) (if "abuses [of the grand jury are] called to the attention of the court, it would doubtless be alert to repress them," if for example the court detected mere prying into domestic and business life rather than a valid inquiry into possible violations of federal law). The record establishes beyond question that the Special Grand Jury in this case was properly constituted and operating under federal law, pursuant to 18 U.S.C. §§ 3331–34. Special Grand Juries are valid if they comply with these statutory procedures.

We believe that the Third Circuit's opinion should be limited to its facts. Insofar as *C. Schmidt & Sons, Inc.* may suggest third party standing to appeal denial of a motion to quash subpoenas to testify directed to employees on the basis that the third party employer has a property right to prevent disruption of its business affairs, the opinion seems to us to be in error. Such a grant of standing lacks a limiting principle that would be consistent with the balance struck by the Supreme Court in charting exceptions to the final order principle. It is clear that a witness may not justify exemption from the finality requirement by merely asserting that compliance with a grand jury subpoena will create a substantial burden unless immediate appellate review is available. *United States v. Ryan,* 402 U.S. 530, 532, 91 S.Ct. 1580, 1581, 29 L.Ed.2d 85 (1971). If a third party employer could seek review on a showing of disruption of

employees' time and attention, or a substantial burden to its business interests, any employer could impede a grand jury investigation, whether or not the employer came forward with concrete assertions that the legal and practical value of fundamental rights would be destroyed if collateral review were withheld.[10] *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. at 376–77, 101 S.Ct. at 674–675. The cases teach that such a showing must be made before a third party has standing to appeal denial of its motion to quash subpoenas directing other witnesses to testify.

### 5. The Motion to Return Documents

The Union sought an inventory of all materials in the hands of the Special Grand Jury and the return of documents, particularly cash receipt and disbursement journals for 1973–1979, given to the Grand Jury in October of 1981, and other original records. But the Union here knew precisely what documents had been subpoenaed, and for what investigatory purpose, and therefore did not need disclosure to substantiate its allegations of harassment and abuse of process. *Compare In re Grand Jury Proceedings (Schofield),* 486 F.2d 85, 93 (3d Cir.1973). The court quite sensibly adopted the Union's inventory as true. Judge Burns did not, however, require return of the original journals because the Government substantiated the Grand Jury's continuing need for the original documents.

 Orders denying a motion to return documents are final, appealable orders when the motion "is in no way tied to a criminal prosecution *in esse* against the movant." *DiBella v. United States,* 369 U.S. 121, 132, 82 S.Ct. 654, 661, 7 L.Ed.2d 614 (1962). The appeal is properly before us. Reviewing this issue, however, we find no reason to disturb the district court's exercise of discretion. The Special Grand Jury, investigating record-keeping viola-

**10.** Judge Rosenn, concurring and dissenting in *In re Matter of Grand Jury Applicants (C. Schmidt & Sons, Inc.),* 619 F.2d 1022, 1030 (3d Cir.1980), points out that recognition of a broad property interest in employees' services "will give standing to an employer in virtually every case when a grand jury issues subpoenas ad testificandum to the employees." *Id.* at 1031. It is difficult to imagine Special Grand Juries effectively investigating organized crime if entities could disrupt proceedings with interlocutory appeals challenging subpoenas to testify.

tions, has retained past records for purposes of analysis that would be impossible to make on photocopies. The Union's understandable need for its records has been accommodated by providing it with copies. The Union retained originals of its current records (1981 forward), and the Special Grand Jury accepted copies. Judge Burns found this arrangement reasonable, and her order denying return of original documents is therefore affirmed.

For the reasons stated above, the order denying the Union's motion to terminate the Special Grand Jury investigation is not a final order under 28 U.S.C. § 1291 and the appeal is dismissed for lack of jurisdiction to review. The appeal from the order denying the motion to quash subpoenas requiring sixteen employees to testify is also dismissed because the Union lacks standing to pursue an interlocutory appeal. The order denying the Union's motion for return of documents is properly before this court, and the order is hereby affirmed.

MESKILL, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority's decision to affirm on the merits the order denying the request of Local 478, International Union of Operating Engineers (Union), for an inventory and return of documents presently held by the Special Grand Jury. I dissent, however, from the majority's decision insofar as it dismisses the Union's appeal from the order denying its motion to terminate the grand jury investigation and to quash the subpoenas *ad testificandum.*

Since early 1980, successive federal grand juries have been investigating possible embezzlement, 29 U.S.C. § 501(c) (1976), and record-keeping violations, 29 U.S.C. § 186 (1976), by the Union. Over the course of the investigation thirty five subpoenas have been issued to officials and employees of the Union compelling their testimony and allegedly requiring the production of hundreds of thousands of documents. At issue in this case are sixteen subpoenas *ad testificandum* issued to every secretary and file clerk in the Union's headquarters. These

subpoenas were issued after the custodian of the Union records refused to authenticate documents by asserting his Fifth Amendment privilege. Although none of the subpoenaed secretaries or file clerks moved to quash, the district court permitted the Union, as their employer, to intervene under Fed.R.Civ.P. 24(a)(2) to challenge the subpoenas. The Union's standing was premised on its "property interest in the contracted-for services of its employees." On more general grounds, the district court recognized that the Union had "an interest in the matter of the subpoenas, which interest may not be protected by the employees who may not share the interest of the union in maintaining normal business operations." *In re Subpoenas to Local 478,* No. N82–191, slip op. at 2 (D.Conn. May 13, 1982).

The Union in its Motion to Quash and for Other Relief asserted a due process right to protection from harassment. Also, the Union claimed a property interest in the time and services of its employees. In its motion and supporting memorandum of law, the Union alleged that the government was using the Special Grand Jury as an instrument of harassment. It claimed that the many waves of subpoenas were burdensome and repetitive and that the government had gone out of its way to make compliance difficult. As a result, the investigation has allegedly cost the Union heavily in employee time, copying costs, disruption of records and accountant and attorneys' fees. The Union characterized the sixteen subpoenas *ad testificandum* as a concrete manifestation of grand jury abuse that would distract its employees and disrupt its operations. The Union asked that the district court quash the subpoenas and terminate the investigation. Although the motion papers and the majority treat the motion to terminate and the motion to quash separately, each motion is grounded upon the same allegations; they differ only as to the relief sought.

Judge Burns denied the requested relief on the merits. She found "no merit to the claim that the government has abused the investigatory powers vested in the grand

jury to harass the union." *In re Subpoenas to Local 478,* slip op. at 4. In addition, "the union [had] not shown that the grand jury investigation [had] been undertaken in bad faith, that the 16 subpoenas [*ad testificandum* ] were intended to harass the union or that the information sought is wholly irrelevant to the investigation. *See In re Liberatore,* 574 F.2d 78, 83 (2d Cir.1978)." *Id.* at 5. I agree and would affirm on the merits.

The majority holds that the denial of the Union's motion to terminate the grand jury investigation is a nonappealable interlocutory order. With respect to the Union's motion to quash, the majority concludes that the Union is without standing to appeal. I do not agree with either of these positions. I believe the issues of standing and appealability are distinct and should be so treated.

*Standing*

One basis for the majority's decision to dismiss the Union's appeal is that the Union's assertion of injury premised on its property interest in the time and attention of its employees is too "amorphous" to confer standing to appeal. Standing has a constitutional and a prudential component. The constitutional aspect of standing requires simply "injury in fact." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). Among the prudential considerations that bear on standing is the requirement that the "plaintiff's complaint fall within 'the zone of interests to be protected or regulated by the ... constitutional guarantee in question.' " *Id.* at 475, 102 S.Ct. at 760, *quoting Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). I believe that the Union satisfies both of these standing requirements. As to the requirement of injury in fact, the Union alleges that the repeated waves of subpoenas have disrupted its operations and have caused it to incur great cost. In addition, it alleges that the subpoenas *ad testificandum* addressed to its employees will deprive the Union of their time and attention. The injury alleged by

the Union is not *de minimis;* it is concrete and particularized.

Although the Due Process Clause does not insulate an employer from the legitimate scope of a grand jury investigation, *see In re Grand Jury Proceedings (FMC I),* 604 F.2d 804, 805 (3d Cir.1979) ("employer does not have the authority to prohibit an employee from complying with a subpoena"); *In re Grand Jury Investigation,* 459 F.Supp. 1335, 1340 (E.D.Pa.1978) (appearance before grand jury is "a public duty owed by all citizens to the government"); *In re Morgan,* 377 F.Supp. 281, 285 (S.D.N.Y.1974) ("For the public good, the scales must tip in favor of the duty of the Special Grand Jury 'to inquire into offenses against the criminal laws of the United States' 18 U.S.C. § 3332, except where the burden cast upon the witness is oppressive in terms of overbreadth of the subpoena or he has a recognized privilege."), it is established that the Constitution does protect against abuse of the grand jury process, including instances of grand jury harassment. *See United States v. Dionisio,* 410 U.S. 1, 11, 93 S.Ct. 764, 770, 35 L.Ed.2d 67 (1973) ("a grand jury subpoena is [not] some talisman that dissolves all constitutional protections"); *United States v. Doe (Schwartz),* 457 F.2d 895, 899 (2d Cir.1972) ("[O]n occasion, a grand jury may overstep bounds of propriety either at its own or the prosecutor's instance, and conduct an investigation so sweeping in scope and undiscriminating in character as to offend other basic constitutional precepts. When this occurs courts are not without power to act ...."), *cert. denied,* 410 U.S. 941, 93 S.Ct. 1376, 35 L.Ed.2d 608 (1973); *In re Grand Jury Investigation,* 459 F.Supp. at 1340 ("courts have exercised the power to quash or modify ... only where there has been a clear showing of unreasonableness or oppressiveness").

If this were a case where an employer had moved to quash a subpoena *ad testificandum* issued incidentally to one of its employees, I would question its standing to do so. Although an employer does possess a property interest in the time and attention of its employees, society's interest in effec-

tive and unhampered grand jury investigations would probably outweigh the minor disruption caused the employer. In this case, however, the Union's motion to quash alleges far greater injury and more serious deprivations of constitutional rights. The Union complains of injury to its protected interests. Where there are interests threatened, there is standing. Assuming there is standing, it is still possible that the protected interests are not sufficiently threatened or deprived to warrant relief. However, this question is appropriately resolved on the merits. *See Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153 & n. 1, 90 S.Ct. 827, 829, & n. 1, 25 L.Ed.2d 184 (1970) ("existence or nonexistence of a 'legal interest' is a matter quite distinct from the problem of standing"); *In re Grand Jury Applicants (C. Schmidt & Sons, Inc.),* 619 F.2d 1022, 1026 (3d Cir.1980) ("degree or value [of property interest] goes not to . . . standing, . . . but to the appropriateness of affording relief").

*Appealability*

I have no quarrel with the majority's insistence on finality as a prerequisite to appealability. The policy of finality embodied in 28 U.S.C. § 1291 admits to few exceptions. Unlike the majority, however, I believe this case presents an appeal over which we have jurisdiction. Orders denying motions to quash are not final orders under 28 U.S.C.A. § 1291 (West Supp.1982) or interlocutory orders appealable as of right under 28 U.S.C.A. § 1292(a) (West Supp.1982). The Supreme Court has explained that "one to whom a subpoena is directed may not appeal the denial of a motion to quash that subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey." *United States v. Ryan,* 402 U.S. 530, 532, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971), *citing Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *see Alexander v. United States,* 201 U.S. 117, 121, 26 S.Ct. 356, 357, 50 L.Ed. 686 (1906). Recognizing that a grand jury subpoena can impinge directly and concretely on the funda-

mental rights of a third party, immediate review of an order denying a motion to quash is available to a third party who asserts a privilege or property right in the subject matter of a subpoena. *See Perlman v. United States,* 247 U.S. 7, 12–13, 38 S.Ct. 417, 419–420, 62 L.Ed. 950 (1918); *Wm. T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d 100, 103 (3d Cir.1982); *United States v. Raineri,* 670 F.2d 702, 712 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 446, 74 L.Ed.2d 601 (1982); *In re Grand Jury Applicants (C. Schmidt & Sons, Inc.),* 619 F.2d 1022, 1024–25 (3d Cir.1980); *In re Grand Jury Proceedings (FMC I),* 604 F.2d 798, 800 (3d Cir.1979); *United States v. Guterma,* 272 F.2d 344 n. 1 (2d Cir.1959). This exception to the rule of finality rests on the assumption that the subpoenaed witness is unlikely to risk a contempt citation in order to protect the rights of a third party to an immediate appeal. *See In re Grand Jury Matter Impounded,* 703 F.2d 56, 58–59 (3d Cir.1983). More important, however, is the recognition that exceptions to the rule of finality should be limited strictly to circumstances where the denial of immediate review would result in a permanent loss of fundamental rights. *Cobbledick v. United States,* 309 U.S. 323, 329, 60 S.Ct. 540, 543, 84 L.Ed. 783 (1940) ("Due regard for efficiency in litigation must not be carried so far as to deny all opportunity for the appeal contemplated by the statutes."); *see Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 376–77, 101 S.Ct. 669, 674–675, 66 L.Ed.2d 571 (1981).

As explained earlier, the Constitution protects against grand jury abuse and deprivations of property without due process. The Union has alleged that both protections are threatened by the grand jury investigation, now over two years old, that produced the subpoenas *ad testificandum* at issue here. These same allegations were deemed sufficient by the district court to allow intervention and are sufficient to confer standing. Although the subpoenas were addressed to employees of the Union, the majority inexplicably concludes that "the Union *can* seek review by standing in con-

tempt." It cannot. Only the subpoenaed witnesses have that option available and they are unlikely to exercise it. If review is denied at this time, the alleged harassment might continue unabated.

I wholeheartedly agree with the majority that the mere assertion "that a ruling is or may be effectively unreviewable absent immediate appeal is not a sufficiently concrete assertion of fundamental rights the legal and practical value of which will be destroyed if not vindicated on collateral review." But the Union's allegations go beyond mere assertions and are, in my judgment, sufficient to warrant appellate review. The majority is concerned that by allowing appeals in situations like that before us, we open the gate to a flood of challenges to legitimate grand jury investigations. I do not envision this scenario. Standing is a formidable barrier to third party intervention and stiff measures are available to penalize those who abuse the judicial process. *United States v. Potamkin Cadillac Corp.,* 689 F.2d 379, 381–82 (2d Cir.1982) (per curiam); Fed.R.App.P. 38. I would adhere to the general rule that orders denying motions to quash are interlocutory and nonreviewable. As Judge Friendly said in *In re Grand Jury Investigation of Violations of 18 U.S.C. § 1621 (Perjury),* 318 F.2d 533 (2d Cir.), *cert. dismissed,* 375 U.S. 802, 84 S.Ct. 25, 11 L.Ed.2d 37 (1963), "the policy of avoiding undue delay in grand jury proceedings, which the Supreme Court has stressed in *Cobbledick* and *DiBella* [369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962)], requires that the applicant be satisfied for the time being with the determination of the district judge ...." *Id.* at 538 (on petition for rehearing). Where, as here, however, an employer's legitimate interest in the operation of its business is allegedly threatened by a grand jury investigation bent on harassment, an appeal to the supervisory powers of this Court should be allowed. We must not forget that:

> While the historical powers of the grand jury are broad, since the panel operates in secrecy and to a great extent under the guidance of the prosecutor, op-

portunities for abuse of the subpoena power are ever present. The grand jury, an integral component of the judicial branch of government, has the power of compulsory process, a power the Congress has not chosen to grant to the investigative offices of the executive branch. The courts must be vigilant against abuse of the grand jury power, for any such abuse would tend to erode the division between the separate and independent branches of the federal government.

*In re Wood,* 430 F.Supp. 41, 47 (S.D.N.Y. 1977).

I am convinced that the Union has standing and that it has alleged a threat to its fundamental rights which, if not remedied now, might result in irreparable harm. I would affirm the judgment of the district court on the merits in its entirety for the reasons spelled out in Judge Burns' memorandum of decision.