**UNITED STATES of America, Appellee,**

v.

**Herb L. LAVENDER, Appellant.**

**No. 222, Docket 78–1155.**

United States Court of Appeals, Second Circuit.

Argued Sept. 1, 1978.

Decided Sept. 26, 1978.

Carol C. White, Asst. U. S. Atty., Buffalo, N. Y. (Richard J. Arcara, U. S. Atty., Buffalo, N. Y., W. D. N. Y. and Theodore J. Burns, Asst. U. S. Atty., Buffalo, N. Y., on brief), for appellee.

Paul J. Cambria, Jr., Buffalo, N. Y. (Herald Price Fahringer, Bruce A. Goldstein, Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N. Y., on brief), for appellant.

Before KAUFMAN, Chief Judge, and LUMBARD and MULLIGAN, Circuit Judges.

LUMBARD, Circuit Judge:

Lavender appeals from an order of the District Court for the Western District of New York denying his motion to quash a grand jury subpoena requiring the production of Lavender's passport. We dismiss since we find that the order of the district court is not a "final decision" and thus is not within our jurisdiction under 28 U.S.C. § 1291.

On March 14, 1978, while attempting to enter this country from Canada at the Peace Bridge in Buffalo, New York, Lavender was arrested after a search of his luggage revealed a substantial quantity of what was alleged to be cocaine. Eight days later, the grand jury indicted Lavender for possessing with intent to distribute and for unlawfully importing a controlled substance.[1] Before that indictment was issued, however, the grand jury caused a subpoena duces tecum to be served on Lavender's

---

1. Specifically, the two-count indictment charged Lavender with violations of 21 U.S.C. §§ 841(a) and 952(a).

mother in California directing her to appear before it with Lavender's passport. Lavender had mailed the passport to Mrs. Lavender from Barbados sometime prior to his arrest.

On March 27 Lavender notified the district court of his intention to file a motion to quash the subpoena. Subsequently, it was agreed that Mrs. Lavender could comply with the subpoena by mailing Lavender's passport to the district court and that the passport would remain sealed until after the hearing on Lavender's motion to quash. At that hearing, Lavender asserted that the subpoena violated his rights under the Fourth and Fifth Amendments and that it was intended solely to produce evidence for use at his trial and thus constituted an abuse of process. The district court, however, denied the motion to quash, ruling that Lavender lacked standing to raise his Fourth and Fifth Amendment claims and finding that the subpoena for his passport was legitimately connected with an ongoing grand jury investigation. Thereafter, Lavender's passport was turned over to the United States Attorney for the Western District of New York.

■ The idea of finality as a limitation on the jurisdiction of the federal courts of appeal is not "a technical concept of temporal or physical termination. It is the means for achieving a healthy legal system." *Cobbledick v. United States*, 309 U.S. 323, 326, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940). The strong public interest in the expeditious administration of justice requires that the orderly progress of a case not be halted for appellate consideration of every incidental question that happens to arise. This interest is particularly great with respect to the conduct of criminal cases. *DiBella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). In accord with the policy against piecemeal review, it is clear that one to whom a subpoena is directed may not appeal an order denying a motion to quash, but must either comply with the

subpoena or resist and contest its validity if a citation for contempt follows. *Cobbledick v. United States, supra.* Exceptions arise only when "denial of immediate review would render impossible any review whatsoever of an individual's claims." *United States v. Ryan*, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971).

■ Lavender claims to fall within an exception to the *Cobbledick* rule since he is not the target of the subpoena and thus cannot precipitate a final decision by resisting its terms and submitting to contempt. Lavender, however, confuses his inability to obtain immediate review with a denial of "any review whatsoever." The district court's rejection of Lavender's abuse of process argument will not prevent him from asserting it at trial, *In re Grand Jury Investigation of Violations*, 318 F.2d 533, 535 (2d Cir. 1963); he is similarly free to raise his Fourth Amendment claims via motions to suppress or for return of his passport.[2] *United States v. Calandra*, 414 U.S. 338, 354 n.10, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). More to the point, the appellate review that Lavender presently seeks will be available if those arguments fail, the passport or its fruits are received in evidence and a conviction results.

Only with respect to Lavender's Fifth Amendment claim of self-incrimination is there a conceivable danger that appellate review following a subsequent conviction will not adequately preserve his rights. Where a claim of privilege is involved appellate courts cannot always repair the error once the "cat is out of the bag." *Maness v. Meyers*, 419 U.S. 449, 463, 95 S.Ct. 584, 42 L.Ed. 574 (1975). If forced to rely on motions at trial or on post-trial review for vindication of his rights under the Fifth Amendment, the individual who unsuccessfully challenges a subpoena directed to a third party may be "compelled to surrender the very protection which the privilege is designed to guarantee." *United States v. Hoffman*, 341 U.S. 479, 486, 71 S.Ct. 814,

2. In this regard, we note that Lavender has already moved to suppress the passport at trial and that decision on that motion has been deferred pending our disposition of the instant appeal.

818, 95 L.Ed. 1118 (1951). Thus, in *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), immediate review was allowed of an order directing a third party to produce documents in which Perlman asserted a Fifth Amendment privilege. The Court explained that if Perlman were forced to "seek a remedy at some other time and in some other way" he would be left "powerless to avert the mischief of the order." *Id.*, at 13, 38 S.Ct. at 419. This court followed *Perlman* in *United States v. Guterma*, 272 F.2d 344 (2d Cir. 1959), and permitted an immediate appeal from an order denying a motion to quash a third-party subpoena where the movant claimed that production of the subpoenaed documents would violate his Fifth Amendment privilege against self-incrimination.

We do not agree, however, that Lavender comes within the exception recognized in *Perlman* and *Guterma*. Unlike the assertedly privileged materials in *Perlman* and *Guterma*,[3] Lavender's passport is already "out of the bag." Consistent with its announced intention, the district court released Lavender's passport to the United States Attorney following its ruling on Lavender's motion to quash. Indeed, with his consent, Lavender's passport has become a part of the public record in this case. Thus whatever damage might have been prevented by immediate review of the district court's order has already occurred, and Lavender's Fifth Amendment rights can at this point be adequately protected by a motion to suppress at trial and by our review of his claim should the passport or its fruits be received in evidence and Lavender appeal a resulting conviction. See *United States v. First National City Bank*, 568 F.2d 853, 860 (2d Cir. 1977) (Gurfein, J., concurring and dissenting). Moreover, while we intend no comment on the ultimate merits of Lavender's claim, we note that motions to quash grand jury subpoenas duces tecum are but rarely meritorious and are most often un-

dertaken for purposes of delay. This reality of the judicial process makes our strict observance of the requirement of finality all the more necessary.

Accordingly, Lavender's appeal from the order denying his motion to quash the subpoena must be and is dismissed.

---

**3.** In *Perlman* the contested documents were kept under seal by the clerk of the court pursuant to an order dismissing a civil action in which the documents had been presented as evidence. The United States Attorney had gained no access to them at the time of Perlman's appeal. In *Guterma* the assertedly privileged materials remained at all relevant times within a safe under the control of the party to whom the subpoena had been directed.