13-2780-cr
United States v. Punn

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————

August Term, 2013

(Argued: October 3, 2013     Decided: December 6, 2013)

Docket No. 13-2780-cr

———————

UNITED STATES OF AMERICA,

*Appellee*,

— v. —

RAKESH K. PUNN,

*Defendant-Appellant*.

———————

B e f o r e:

POOLER, LYNCH, and DRONEY, *Circuit Judges*.

———————

1

MICHAEL K. BACHRACH, Law Office of Michael K. Bachrach, New York, New York (Steve Zissou, Elizabeth E. Macedonio, Bayside, New York, *on the brief*), *for* Defendant-Appellant.

ALLEN L. BODE (David C. James, Assistant United States Attorney, *on the brief*), Assistant United States Attorney, *for* Loretta E. Lynch, United States Attorney, Eastern District of New York, New York, New York, *for* Appellee.

Appellant Rakesh Punn appeals from orders of the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*) denying Punn's motion to quash grand jury subpoenas directed to his adult children, and denying reconsideration of that motion. Punn argues that the subpoenas should have been quashed because they were issued for the sole or dominant purpose of aiding the government in preparing for Punn's trial on a pending indictment. We conclude that the district court's orders are not immediately appealable because Punn will have an opportunity at his trial to challenge the use of evidence that is allegedly improperly obtained through enforcement of the subpoenas, and any adverse ruling on such a challenge will not be effectively unreviewable on appeal from a final judgment of conviction. Accordingly, the appeal is DISMISSED for lack of appellate jurisdiction.

———————

GERARD E. LYNCH, *Circuit Judge*:

This appeal requires us to decide whether an order denying a motion to quash grand jury subpoenas directed at third parties on the ground that the subpoenas were issued for the sole or dominant purpose of preparing for the movant's trial on a pending indictment is an immediately appealable order under 28 U.S.C. § 1291. Although this Court has addressed this issue on a number of occasions, our case law does not reflect a uniform approach to addressing that question, or a consistent answer. We conclude that such orders are not immediately appealable.

**BACKGROUND**

Appellant Rakesh Punn is a licensed medical doctor whose practice included pediatric care. He is also the father of two adult children, Sippy and Jesse Punn. In July 2010, Sippy and Jesse Punn provided the Nassau District Attorney's Office with information suggesting their father's possible commission of crimes including unlawful surveillance, child pornography, and health care fraud. Both gave sworn statements to local law enforcement officers, and Sippy Punn testified twice before Nassau County grand juries. Neither of the children spoke to federal investigators or testified before a federal grand jury at that time.

3

On January 4, 2012, a grand jury in the Eastern District of New York indicted Punn on seven counts of sexual exploitation of children, in violation of 18 U.S.C. § 2251(a) & (e), and twenty-nine counts of health care fraud, in violation of 18 U.S.C. § 1347. The indictment alleges that Punn created sexually explicit images and videos of patients and submitted fraudulent insurance claims for medical procedures and office consultations which were conducted not for medically accepted purposes, but solely for the purpose of sexual gratification. The case was assigned to Judge Joanna Seybert and is currently in its pretrial phase.

On March 4, 2013, Punn filed pretrial motions seeking, among other things, to suppress evidence derived from the search of Punn's home. On May 6, two days before the original deadline for the government's response to Punn's pretrial motions, Jesse and Sippy Punn were served with subpoenas to testify on May 9 before a federal grand jury investigating their father. On May 9, Punn moved in his case to quash those subpoenas, on the ground that they were issued for the improper purpose of assisting the government in preparing for Punn's trial on the pending indictment, including the government's response to Punn's

4

pretrial motions.[1]  On July 16, after full briefing, the district court denied Punn's

motion to quash, holding that Punn lacked standing to raise constitutional issues

of privilege on behalf of his adult children, and that his motion on his own behalf

failed on the merits because he had failed to offer evidence overcoming the

presumption that grand jury subpoenas are issued for proper purposes.  Punn

moved for reconsideration, which was also denied.  This appeal followed.

## DISCUSSION

Punn asks this Court to hold that he has standing to challenge the grand

jury subpoenas served on his adult children, and that the subpoenas should have

been quashed because they were issued for the improper purpose of allowing the

government to prepare its case for trial on an already pending indictment, by

gathering evidence and interviewing potential defense witnesses.  Prior to

addressing either of these issues, however, we must decide whether we have

jurisdiction to hear an appeal from an order denying a motion to quash grand

jury subpoenas directed at third parties on the ground that the subpoenas were

---

[1] Punn's motion was originally filed on his own behalf and, purportedly, on behalf of Jesse and Sippy.  The Punn children were given an opportunity to seek their own counsel, and subsequently filed their own motion to quash the grand jury subpoenas, which the district court denied.  They have not appealed from the denial of that motion.

5

issued for the improper purpose of trial preparation. Because we conclude that

such orders are not immediately appealable, and thus that we lack jurisdiction to

hear Punn's appeal, we dismiss the appeal without reaching the merits of Punn's

contentions.[2]

I.      Appellate Jurisdiction

In general, a party "is entitled to a single appeal, to be deferred until final

judgment has been entered, in which claims of district court error at any stage of

the litigation may be ventilated." Digital Equip. Corp. v. Desktop Direct, Inc., 511

U.S. 863, 868 (1994). Consistent with this background principle, 28 U.S.C. § 1291

permits the Courts of Appeals to hear "appeals from all final decisions of the

_____

[2] Although some of this Court's opinions have referred to the question of
appellate jurisdiction in cases such as the instant one as whether the appellant
has "standing to pursue an immediate appeal" of the denial of the motion to
quash, see In re Subpoenas to Local 478, 708 F.2d 65, 72 (2d Cir. 1983),  we note
that the question of whether Punn had standing to move to quash the grand jury
subpoenas directed at third parties is distinct from whether the denial of that
motion is immediately appealable. See In re Grand Jury Investigation of
Violations of 18 U.S.C. 1621 (Perjury), 318 F.2d 533, 537 (2d Cir. 1963)
(distinguishing between standing of defendant to object to summons issued to
another person, and "the question of the finality and hence of the appealability of
the order refusing to quash the summons"). We further note that whether a
criminal defendant has standing to challenge third-party subpoenas on the
ground that they were issued for improper purposes of trial preparation is a
different question from whether such a defendant can seek to quash third-party
subpoenas on the basis of asserted privileges belonging to the third party.

district courts of the United States . . . except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291. The typical appeal under § 1291 is an appeal from an order that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Lauro Lines s.r.l. v. Chasser, 490 U.S. 495, 497 (1989) (internal quotation marks omitted). Less commonly, § 1291 also permits appeals from orders that are not final in the traditional sense. Specifically, the collateral order doctrine, a practical construction of § 1291, permits an immediate appeal from a "narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." Digital Equip. Corp., 511 U.S. at 867 (internal quotation marks and citation omitted).

To fall within the scope of the collateral order doctrine, an order must "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." Van Cauwenberghe v. Biard, 486 U.S. 517, 522 (1988) (internal quotation marks omitted). An order is "effectively unreviewable" where "the order at issue involves an asserted right the legal and practical value of which would be destroyed if it were not

7

vindicated before trial." Lauro Lines s.r.l., 490 U.S. at 498-99 (internal quotation marks omitted). In contrast, the fact that a ruling "may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment" is not sufficient. Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 107 (2009) (internal quotation marks omitted). The determination of whether appellate jurisdiction exists focuses on "the entire category to which a claim belongs" rather than the individual claim at issue. Id. (internal quotation marks omitted). "As long as the class of claims, taken as a whole, can be adequately vindicated by other means, the chance that the litigation at hand might be speeded, or a particular injustice averted, does not provide a basis for jurisdiction under § 1291." Id. (internal quotation marks and alteration omitted).

In general, an order denying a motion to quash a grand jury subpoena is not a final decision and is not immediately appealable under § 1291. In re Grand Jury Subpoena for New York State Income Tax Records, 607 F.2d 566, 569 (2d Cir. 1979). "To obtain appellate review, the subpoenaed person ordinarily must defy the district court's enforcement order, be held in contempt, and then appeal the contempt order, which is regarded as final under § 1291." In re Air Crash at Belle Harbor, 490 F.3d 99, 104 (2d Cir. 2007) (internal quotation marks omitted). In

8

some instances, however, the obligation to submit to contempt is excused because "the purposes underlying the finality rule require a different result." Id. at 105 (internal quotation marks omitted).

One such instance, the "Perlman Exception," takes its name from the Supreme Court decision describing it, Perlman v. United States, 247 U.S. 7 (1918). See also In re Air Crash at Belle Harbor, 490 F.3d at 105 (describing the "Perlman Exception" to the contempt requirement). In Perlman, the defendant had previously been a witness in a patent infringement suit. In connection with his testimony in that case, certain exhibits that he owned were offered into evidence. Following the resolution of the patent suit, the court impounded the exhibits and later issued an order to show cause why the exhibits should not be produced to the government for use in connection with a grand jury investigation of Perlman. Perlman sought an order restraining the government from using the exhibits. He argued, among other things, that production of the exhibits to the government would make him a "compulsory witness against himself" in violation of the Fifth Amendment. Perlman, 247 U.S. at 13. In the Supreme Court, the government argued that the district court's denial of Perlman's request was "not final as to Perlman but interlocutory in a proceeding not yet brought" and therefore not

9

immediately reviewable. Id. The Supreme Court rejected this argument, finding that to hold otherwise would leave Perlman "powerless to avert the mischief of the order." Id.

The Perlman decision has "come to stand for the principle that the holder of an asserted privilege may immediately appeal the enforcement of a subpoena when the subpoena is directed at another person who does not object to providing the testimony or documents at issue." In re Air Crash at Belle Harbor, 490 F.3d at 106; see also In re Grand Jury Subpoena Dated Jan. 30, 1986 to Bronx Democratic Party, 784 F.2d 116, 118 ("There is an exception to [the contempt] rule, first enunciated in Perlman v. United States, 247 U.S. 7 (1918), that allows an immediate appeal from the denial of a motion to quash – without the prerequisite of an adjudication in contempt – when a person seeks to quash a subpoena directed to another, enforcement of which could violate one or more of the constitutional rights of the person not served."). The rule is justified by the fact that a subpoenaed party is unlikely to risk contempt in order to protect a privilege that is not his own. In re Air Crash at Belle Harbor, 490 F.3d at 105-106; In re Subpoenas to Local 478, 708 F.2d 65, 69 (2d Cir. 1983). The mere fact, however, that a movant cannot himself precipitate immediate review through a

contempt proceeding, does not end the finality inquiry. In re Subpoenas to Local 478, 708 F.2d at 72. Forgiveness of the contempt requirement is available "[o]nly in the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims." United States v. Ryan, 402 U.S. 530, 533 (1971); see also In re Subpoenas to Local 478, 708 F.3d at 72.

II.     Abuse of the Grand Jury Process

"The law is settled in this circuit and elsewhere that it is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial." In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels), 767 F.2d 26, 29 (2d Cir. 1985) ("Simels") (internal quotation marks and alteration omitted). Where, however, "the grand jury investigation is not primarily motivated by this improper purpose, evidence obtained pursuant to the investigation may be offered at the trial on the initial charges." United States v. Leung, 40 F.3d 577, 581 (2d Cir. 1994). The defendant has the burden of proving that the grand jury subpoenas were issued for an improper purpose, as the subpoenas are otherwise presumed to have a proper purpose. See United States v. Salameh, 152 F.3d 88, 109 (2d Cir. 1998). To satisfy this burden, the

11

defendant "must present particularized proof of an improper purpose." Id.

(internal quotation marks omitted).

III.    Analysis

Punn initially argues that the district court's order is immediately

appealable because it denied his motion to intervene in the grand jury

proceedings, and "[i]t is well settled that the denial of a motion to intervene as of

right is an appealable final order under 28 U.S.C. § 1291." In re Katz, 623 F.2d

122, 124 (2d Cir. 1980).  Punn's argument suffers from a simple, but fundamental,

flaw.  Punn did not move to intervene in the grand jury proceedings.  Instead, he

filed, in his own criminal action, a motion to quash the grand jury subpoenas.

His letter motion bore the docket number of his pending indictment and was

addressed to the judge presiding over his criminal case; it was not styled as a

miscellaneous matter addressed to the judge supervising the grand jury

proceedings or to the motions part.  See E.D.N.Y. R. 50.5(a)(I)(E) (miscellaneous

judge responsible for hearing and determining "[a]ll matters relating to

proceedings before the grand jury").  Moreover, the letter motion, the district

court's order, and Punn's eventual motion for reconsideration, all referred only to

12

his request to quash the subpoenas, and made no mention of any intervention.[3]

Because no motion to intervene was filed, there was no such motion to deny, and no denial from which to immediately appeal.[4]

Punn next argues that the denial of his motion to quash the grand jury subpoenas issued to his children falls within the small category of rulings encompassed by the collateral order doctrine. That argument is more troubling, because our precedents appear to point in different directions. Punn points to our decision in Simels, which permitted an immediate appeal of an order denying the appellant's motion to quash a grand jury subpoena directed to another person, and held that its issuance constituted an abuse of the grand jury process. 767 F.2d at 26. The government, however, directs our attention to our

---

[3] In letters filed with the district court after the defendant's motion to quash, the defendant and government addressed the question of defendant's standing. In those letters, both the defendant and government characterized the defendant's motion as a motion to intervene in the grand jury proceedings. This subsequent characterization, however, cannot trump Punn's own initial characterization of his motion, and the district court's understanding of that motion.

[4] Even if Punn had properly filed a motion to intervene as of right in the grand jury proceedings, denial of that motion would merely give this Court jurisdiction to review the district court's denial of intervention. It would not follow that a denial of his motion to quash would be immediately reviewable in that procedural context.

decisions in <u>United States v. Lavender</u>, 583 F.2d 630 (2d Cir. 1978) and <u>In re</u>

<u>Grand Jury Investigation of Violations of 18 U.S.C. 1621 (Perjury)</u>, 318 F.2d 533

(2d Cir. 1963) ("<u>Perjury Grand Jury</u>"), which held, in similar circumstances, that

orders denying motions to quash were not immediately appealable.  Resolution

of the parties' dispute requires this Court to examine and attempt to reconcile

these key precedents.

The earliest of these cases, <u>Perjury Grand Jury</u>, involved an appeal by

General Motors Corporation ("GM") from an order denying, among other things,

the company's motion to quash grand jury subpoenas issued to certain GM

officials.  In 1961, a federal grand jury in the Southern District of New York

investigated allegations that GM had violated the Sherman Act.  During the

investigation, a number of GM officials testified before the grand jury, which

later returned an indictment against GM.  The case was transferred to the

Northern District of Illinois, where it was prosecuted by the Antitrust Division of

the Department of Justice.  In 1962, a second grand jury, also in the Southern

District of New York, was convened to investigate whether the officials who had

testified before the 1961 grand jury had committed perjury.  An attorney in the

Antitrust Division who was assisting in the prosecution of the case in Illinois

14

caused the 1962 grand jury in the Southern District to issue subpoenas to GM officials who had not testified before the 1961 grand jury, but who were purportedly important witnesses for GM in its antitrust case. Upon learning of the subpoenas, GM moved in the Southern District of New York for various relief that would prevent the Antitrust Division from learning of and using evidence from the 1962 grand jury proceeding in connection with GM's trial. As relevant to our discussion here, GM sought to quash the subpoenas directed to the GM officials who had not previously testified before the 1961 grand jury.

Like Punn, GM argued that the subpoenas had to be quashed to prevent the grand jury proceedings from being abused by "enabling the Government to examine defense witnesses in advance of a criminal trial, despite the considered omission from the Federal Rules of Criminal Procedure of any provision for this type of discovery, and to do so, moreover, in the secret, nonadversary form of grand jury testimony." Perjury Grand Jury, 318 F.2d at 534 (footnote omitted). We did not reach the merits of GM's appeal, however, because we concluded that the district court's order was "not appealable as a final decision under 28 U.S.C. § 1291." Id. at 536. In so holding, the Court recognized that any interest GM might have in preventing abuse of the grand jury process could be adequately

15

protected at GM's criminal trial: "The denial of [GM's] motion here will in no way prevent it from asserting in the criminal trial in the Northern District of Illinois, if occasion should arise, that evidence proffered against it has been improperly obtained." Id. at 535. We further explained that the district court's order denying GM's motion to quash had not made a final determination of GM's claims regarding the impropriety of the grand jury subpoenas, but had merely refused what GM deemed "the most efficacious means of sealing off the evidence to be taken before the grand jury investigating perjury from the trial of the anti-trust indictment." Id. at 536.

The Court viewed GM's position as analogous to that of the movant in Di Bella v. United States, 369 U.S. 121 (1962), in which the Supreme Court had held that orders granting or denying pre-indictment motions to "suppress the evidentiary use in a federal criminal trial of material allegedly procured through an unreasonable search and seizure" were not immediately appealable. Id. at 121.[5] The Court explained that the mere fact that the motion to suppress had

_____

[5] Today, pursuant to an amendment passed in 1968, see Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, 82 Stat. 197 (1968), all such orders are subject to interlocutory appeal by the United States pursuant to 18 U.S.C. § 3731. At the time of Di Bella, only some suppression orders were appealable. The Di Bella Court thus had to address whether certain suppression

16

been filed prior to the issuance of the indictment did "not transmute the ensuing evidentiary ruling into an independent proceeding begetting finality even for purposes of appealability." Id. at 131. The Court explained that the ruling would not be truly independent of the forthcoming criminal proceeding:

> Presentations before a United States Commissioner, as well as before a grand jury, are parts of the federal prosecutorial system leading to a criminal trial. Orders granting or denying suppression in the wake of such proceedings are truly interlocutory, for the criminal trial is then fairly in train. When at the time of ruling there is outstanding a complaint, or a detention or release on bail following arrest, or an arraignment, information, or indictment – in each such case the order on a suppression motion must be treated as but a step in the criminal case preliminary to the trial thereof.

Id. (internal quotation marks and citations omitted).

We next confronted the appealability of the denial of a motion to quash in 1978 in United States v. Lavender, 583 F.2d 630. There, the defendant was arrested while crossing the Canadian-American border into New York, when a search of his luggage uncovered a substantial quantity of cocaine. Shortly before Lavender was indicted, his mother was served with a grand jury subpoena duces

---

orders not then covered by § 3731 were nevertheless appealable as final orders under 28 U.S.C. § 1291.

tecum directing her to appear before the grand jury with Lavender's passport. Lavender moved to quash the subpoena on the ground that the subpoena "violated his rights under the Fourth and Fifth Amendments and . . . was intended solely to produce evidence for use at his trial and thus constituted an abuse of process." Id. at 632. Like Punn, Lavender acknowledged that ordinarily the subpoenaed party must suffer a contempt citation in order to render appellate review available, but claimed to "fall within an exception to [this] rule since he [was] not the target of the subpoena and thus [could not] precipitate a final decision by resisting its terms and submitting to contempt." Id.

In rejecting Lavender's argument, we emphasized that an inability to precipitate immediate review of the denial one's claim is not equivalent to the denial of "any review whatsoever." Id. at 632 (internal quotation marks omitted); see also Ryan, 402 U.S. at 533 ("Only in the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims have we allowed exceptions to [the contempt rule]."). Even without an immediate appeal, Lavender would not be deprived of the ability to obtain review of the district court's denial of his claim:

18

> The district court's rejection of Lavender's abuse of
> process argument will not prevent him from asserting it
> at trial; he is similarly free to raise his Fourth
> Amendment claims via motions to suppress or for
> return of his passport.  More to the point, the appellate
> review that Lavender presently seeks will be available if
> those arguments fail, the passport or its fruits are
> received in evidence and a conviction results.

Lavender, 583 F.2d at 632 (internal quotation marks, citations, and footnote

omitted).  The Court distinguished Lavender's Fifth Amendment claim of self-

incrimination, however, which alone among Lavender's claims presented "a

conceivable danger that appellate review following a subsequent conviction

[would] not adequately preserve his rights."  Id.  As the Court explained,

> [w]here a claim of privilege is involved appellate courts
> cannot always repair the error once the "cat is out of the
> bag."  If forced to rely on motions at trial or on post-trial
> review for vindication of his rights under the Fifth
> Amendment, the individual who unsuccessfully
> challenges a subpoena directed to a third party may be
> "compelled to surrender the very protection which the
> privilege is designed to guarantee."

Id. (citation omitted).[6]

---

[6] Ultimately, the Court found no jurisdiction to hear even Lavender's Fifth Amendment claim of self-incrimination because, Lavender's passport having already been turned over the Government, "whatever damage might have been prevented by immediate review of the district court's order [had] already occurred."  Id. at 633.

19

Thus, by 1978, the law of this Circuit was well established that a criminal defendant whose efforts to quash third-party subpoenas on the ground of grand jury abuse were rejected in the district court was not entitled to immediate review of the district court ruling. The logic of these rulings was clear. Unlike motions to quash that seek to preserve privileges of the movant against possible disclosure by a third-party witness, and thereby to prevent immediate, irreparable harm, motions that allege improper use of the grand jury for trial preparation ultimately seek to prevent trial prejudice. Any improper acquisition of evidence by the government through such abuse can thus be dealt with at trial by excluding such evidence, and failing that, by appeal from any resulting conviction.

This apparently clear and settled rule is arguably called into question, however, by the 1985 case Simels, 767 F.2d 26, in which we took what might appear to be a different approach to the question of appealability. Simels involved an appeal from an order denying Donald Payden's motion to quash a grand jury subpoena served upon Robert M. Simels, an attorney who had been retained to defend Payden in a pending criminal proceeding. The indictment charged Payden with, among other things, engaging in a continuing criminal

20

narcotics enterprise, and sought the forfeiture of "all profits and proceeds of profits obtained" by Payden via the enterprise. Simels, 767 F.2d at 27-28 (internal quotation marks omitted). On the government's motion, Simels was ordered by the district court to produce documents relating to fees paid by or on behalf of Payden, for use at trial. Id. At 28. After the legal community raised objections to the subpoena based on concerns about preserving the attorney-client relationship and protecting a defendant's right to effective assistance and choice of counsel, the government switched tactics. The trial subpoena was withdrawn, but Simels was served with a grand jury subpoena seeking the same materials. Id. Thereafter, Payden moved to intervene as of right in the grand jury proceedings and to quash the subpoena.

Like Punn, Payden argued "that the subpoena constituted an abuse of process because its 'sole or dominant purpose' [was] to obtain evidence for use at trial." Id. Unlike Punn, however, Payden also argued that enforcement of the subpoena would impinge upon his "right to have counsel of his choice, and to have that counsel fully and effectively prepare for trial." Id. (internal quotation marks omitted). We succinctly noted our jurisdiction over the appeal, explaining simply that "[b]ecause appellant-intervenor . . . seeks to quash a third-party

21

subpoena on the ground that its enforcement will violate his constitutional rights, we may consider his claims without requiring his attorney to suffer a contempt citation." Id. at 29. The Simel's Court's discussion of appellate jurisdiction did not mention, or even cite, either Lavender or Perjury Grand Jury. Instead, it relied on In re Grand Jury Subpoena Served Upon Doe, 759 F.2d 968, 971 n.1 (2d Cir. 1985), vacated, 781 F.2d 238 (2d Cir. 1986) ("Doe")[7] and In re Katz, 623 F.2d 122, 124-25 (2d Cir. 1980) (Fifth Amendment self-incrimination claim and attorney-client privilege), two cases that did not mention or involve claims that grand jury subpoenas were being issued for the improper purpose of trial preparation.

---

[7] Doe, like Simels, involved an appeal by a client of an order denying the client's motion to quash a grand jury subpoena served on his lawyer. Unlike Simels, however, the client in Doe had not yet been indicted and there was no pending criminal proceeding. In a footnote, the Court in In re Doe explained the basis for its jurisdiction to the hear the appeal by recognizing an exception to the contempt rule "when the subpoena is directed to a third party and the one seeking to quash the subpoena claims that its enforcement will violate one or more of his constitutional rights," and observing that many circuits had "allowed an immediate appeal in cases where a party's attorney is subpoenaed." Doe, 759 F.2d at 971 n.1. Doe was subsequently vacated by In re Grand Jury Subpoena Served Upon Doe, 781 F.2d 238 (1986) (en banc) ("Doe II"). Although the en banc Court in Doe II must have concluded that it had jurisdiction to hear the appeal, the opinion contains no discussion of the Court's jurisdiction.

Punn points to <u>Simels</u> as precedent for an immediate appeal of a denial of a motion to quash on the grounds of abuse of the grand jury for trial preparation. While the brief discussion of jurisdiction in <u>Simels</u> is unenlightening, Punn's argument draws some force from the basic facts of the case. The Court did accept jurisdiction over the appeal, and rather than address the appellant's Sixth Amendment claims, it resolved the case by holding that the subpoena should have been quashed because it was issued for the improper purpose of trial preparation. <u>Simels</u>, 767 F.2d at 29-30.

Punn's reading of <u>Simels</u>, however, pointedly ignores our prior decisions in <u>Lavender</u> and <u>Perjury Grand Jury</u>. Accepting that reading would require us to hold that <u>Simels</u> effectively overruled those cases. Such a conclusion is impermissible. First, <u>Simels</u> cannot have overruled <u>Lavender</u> and <u>Perjury Grand Jury</u>, since a panel of this Court has no power to overrule holdings of prior panels. See <u>WNET, Thirteen v. Aereo, Inc.</u>, 712 F.3d 676, 695 (2d Cir. 2013). Second, <u>Simels</u> did not purport to affect the law established by those cases in any way; it did not criticize, distinguish, limit, or even cite them. Accordingly, we must seek an understanding of <u>Simels</u> that reconciles its outcome with prior Circuit case law. Fortunately, such an understanding is not difficult when the

23

facts of <u>Simels</u> are thoughtfully considered, and its terse jurisdictional analysis is carefully parsed.

The <u>Simels</u> panel was faced with a client's motion to quash a subpoena directed at his *attorney*, the enforcement of which, the client argued, would have infringed the client's Sixth Amendment rights to effective assistance and choice of counsel. While no decision of this Court – then or since – has ever held that an order denying a motion to quash grand jury subpoenas directed at third parties on the basis of abuse of the grand jury process would be effectively unreviewable upon a later appeal, at least two decisions – the two decisions relied upon in <u>Simels</u> – had held or implied that an immediate appeal was available when the movant's attorney was the subpoenaed party, because of the potential impact on the attorney-client relationship. See <u>Doe</u>, 759 F.2d at 971 n.1 ("[A] vast majority of the circuits, including the Second Circuit, has allowed an immediate appeal in cases where a <u>party's attorney</u> is subpoenaed." (emphasis supplied) (citing <u>Katz</u>, 623 F.2d at 122)); <u>Katz</u>, 623 F.2d at 124-25 (permitting immediate appeal of denial of client's motion to quash subpoena directed at attorney on grounds of attorney-client privilege and Fifth Amendment self-incrimination). Thus, the finding of appellate jurisdiction in <u>Simels</u> seems to have rested not on the claim of grand

jury abuse, but on the proposition that subpoenas directed to attorneys, which often present potentially irreparable disclosures of privilege, [8] are susceptible not only to challenge by the client on those grounds, but also to immediate appeal of district court orders rejecting such challenges under the collateral order doctrine.[9]

---

[8] We express no opinion as to whether, given subsequent case law development, see Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 103 (2009) (holding disclosure orders adverse to attorney-client privilege not immediately appealable), an order denying a client's motion to quash a subpoena directed to his attorney, when the client is already under indictment or a party to litigation, would still be immediately appealable today. See, e.g., United States v. Copar Pumice Co., 714 F.3d 1197, 1208 n.5 (10th Cir. 2013) (collecting cases); In re Grand Jury, 705 F.3d 133, 144-46 (3d Cir. 2012) (holding Perlman exception remains viable after Mohawk in case where privilege-holder is a grand jury subject); Holt-Orsted v. City of Dickson, 641 F.3d 230, 238 (6th Cir. 2011) ("[T]he Mohawk decision has altered the legal landscape related to collateral appeals of discovery orders adverse to the attorney-client privilege and narrowed the category of cases that qualify for interlocutory review. . . . "[W]here the privilege holder is a party to the litigation with recourse in a post-judgment appeal, we conclude that Perlman no longer affords jurisdiction to hear this interlocutory appeal."); United States v. Krane, 625 F.3d 568, 570 (9th Cir. 2010) (Perlman survives Mohawk in context of case where privilege-holder is non-party); Wilson v. O'Brien, 621 F.3d 641, 643 (7th Cir. 2010) ("Mohawk Industries calls Perlman and its successors into question, because, whether the order is directed against a litigant or a third party, an appeal from the final decision will allow review of the district court's ruling. Only when the person who asserts a privilege is a non-litigant will an appeal from the final decision be inadequate.").

[9] Having apparently accepted jurisdiction of the appeal on this ground, the Simels court nevertheless opted not to resolve the merits of Payden's Sixth Amendment challenge to the subpoenas. Cognizant of the "significance" of the appellant's Sixth Amendment claims, but equally sensible of the view that courts

Viewing Simels in the context in which it arose, and in relation to the precedent on which it relied, it is clear that the Court's brief description of its appellate jurisdiction merely reiterated the view that a client could take an immediate appeal from the denial of his motion to quash a subpoena directed to his attorney. See Doe, 759 F.2d at 971 n.1 (collecting cases). Read in harmony with this Court's other precedents, Simels does not disturb our conclusion that Punn's claim of grand jury abuse will be effectively reviewable on appeal from a final judgment.

In opposition to this conclusion, Punn raises a series of arguments that seek to distinguish Lavender and Perjury Grand Jury from his case or otherwise diminish their import. Those arguments are unavailing. To begin, Punn points

"should not unnecessarily decide broad constitutional issues," the Court opted to resolve the case on a "narrower ground." Simels, 767 F.2d at 29. Thus, the panel appears to have asserted pendent appellate jurisdiction over Payden's claim of grand jury abuse for trial preparation purposes, and resolved the case by quashing the subpoena on that ground. See Myers v. Hertz Corp., 624 F.3d 537, 553 (2d Cir. 2010) (describing pendent appellate jurisdiction as discretionary doctrine that allows court, "'[w]here we have jurisdiction over an interlocutory appeal of one ruling,' to exercise jurisdiction over other, otherwise unappealable interlocutory decisions, where such rulings are 'inextricably intertwined' with the order over which we properly have appellate jurisdiction, or where review of such rulings is necessary to ensure meaningful review of the appealable order.").

out that both Lavender and Perjury Grand Jury were decided before Simels.  That point is meritless.  As noted above, neither Lavender nor Perjury Grand Jury has been overruled, and we remain bound by both decisions.

With respect to Lavender, Punn contends that an immediate appeal was denied in that case because Lavender's passport had already been turned over to the government, and thus the cat was already out of the bag.  In contrast, Punn's children have not yet testified before the federal grand jury, and thus, Punn argues, the harm can and must be averted at this time.  Punn's argument pointedly ignores the fact that the Lavender court expressly distinguished Lavender's Fifth Amendment self-incrimination claim from his grand jury abuse claim, explaining that only the former presented "a conceivable danger that appellate review following a subsequent conviction will not adequately preserve [appellant's] rights."  Lavender, 583 F.2d at 632.  The Court explained that "[w]here a claim of *privilege* is involved appellate courts cannot always repair the error once the 'cat is out of the bag.'"  Id. (emphasis supplied).  It is thus clear that the Lavender court would have permitted an immediate appeal of the rejection of Lavender's claim of privilege, but for the mootness of that claim.  With respect to Lavender's claim of grand jury abuse, in contrast, the court simply concluded that it lacked jurisdiction to hear the claim.

Punn attempts to distinguish <u>Perjury Grand Jury</u> by pointing out that that case involved a grand jury's investigation into individuals other than the movant and into possible offenses of perjury. We fail to see the relevance of these distinctions to the availability of an immediate appeal from the denial of a motion to quash a subpoena. In <u>Perjury Grand Jury</u>, as here, the essential argument was that the grand jury subpoenas were issued not for the purpose of investigating new crimes, but instead for the sole or dominant purpose of preparing for the movant's trial on a pending indictment. In nearly every case of alleged grand jury abuse, the government can and does argue that it is investigating other individuals or other crimes.[10] The credibility of the government's contentions relates to the merits of the motion to quash, not to the immediate appealability of the motion's denial. In sum, there is no meaningful basis on which to distinguish Punn's claim from the claims found not to be immediately appealable in either <u>Lavender</u> or <u>Perjury Grand Jury</u>.

Thus, a proper application of the collateral order doctrine, and a careful reading of this Circuit's case law that reconciles our various precedents, lead to

---

[10] Indeed, in the instant case, the government claims that the grand jury is investigating the additional crime of witness tampering.

the conclusion that an order denying a motion to quash a grand jury subpoena directed at a third party on the ground that the subpoena was issued for the improper purpose of preparing for the movant's trial on a pending indictment is not a final decision under § 1291, and is therefore not immediately appealable. Punn, who is in the midst of his criminal proceedings, will have an opportunity at or before trial to challenge the admissibility of any evidence obtained through enforcement of the allegedly improper grand jury subpoenas, and his claim will not be "effectively unreviewable" upon appeal from a final judgment.

Although Punn, who is not the target of the grand jury subpoenas, is unable to precipitate immediate appellate review through contempt proceedings, his is simply not among the "limited class of cases where denial of immediate review would render impossible any review whatsoever." Ryan, 402 U.S. at 533. To the contrary, the district court's denial of Punn's motion to quash will not prevent him from asserting in his criminal trial that the "evidence proffered against [him] has been improperly obtained." Perjury Grand Jury, 318 F.2d at 535; see also Lavender, 583 F.2d at 632 (noting appellant's ability to assert abuse of process argument at trial). As we noted in Perjury Grand Jury, even if quashing the subpoenas may be, from Punn's perspective, the most "efficacious

29

means" of preventing evidence and information obtained from the conduct of the grand jury proceedings from tainting his trial, it is not the only means. 318 F.2d at 536. As we recognized even in Simels, "[i]n some circumstances, it may be appropriate to enforce the rule against using a grand jury subpoena predominantly for trial preparation simply by barring use at trial of evidence obtained pursuant to the subpoena, thereby leaving the grand jury's access to the evidence unimpaired." 767 F.2d at 30.

In short, Punn's claim can be adequately vindicated upon appeal from a final judgment. The nature of Punn's interest in preventing the enforcement of the grand jury subpoenas is not the kind "whose legal and practical value will be destroyed if not vindicated on collateral review," In re Local 478, 708 F.2d at 72, such as a claim of privilege, as to which "appellate courts cannot always repair the error once the 'cat is out of the bag.'" Lavender, 583 F.2d at 632. As in Lavender, if Punn's arguments continue to fail before the district court, purportedly ill-gotten evidence or its fruits are admitted at his trial, and conviction results, appellate review will be available at that point. Should this Court then determine that the subpoenas were issued for the sole or dominant purpose of preparing for Punn's trial, it may order a new trial without the use of

the ill-gotten evidence, or whatever additional remedies are necessary to ensure

that Punn's legitimate interests are fully preserved.

## CONCLUSION

Accordingly, we hold that the district court's orders denying Punn's

motion to quash the grand jury subpoenas directed to Sippy and Jesse Punn, and

denying reconsideration of that motion, do not fall within the small class of

rulings encompassed by the collateral order doctrine and are not otherwise final.

Because they are not final decisions within the meaning of 28 U.S.C. § 1291, they

are not immediately appealable.  The appeal from the district court's orders is

therefore DISMISSED.