**16-266-cv**

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM, 2016

ARGUED: FEBRUARY 13, 2017
DECIDED: SEPTEMBER 8, 2017

No. 16-266-cv

IN RE GRAND JURY SUBPOENAS RETURNABLE DECEMBER 16, 2015

————

Appeal from the United States District Court
for the Eastern District of New York.
No. 15-mc-2346 – John Gleeson, *District Judge*.

————

Before: WALKER, LIVINGSTON, *Circuit Judges*, AND BRICCETTI, *District Judge*.[*]

————

A Chinese construction company (the Company) and seven of its employees (collectively, Appellants) appeal from an order of the United States District Court for the Eastern District of New York (Gleeson, *J.*) denying their motion to quash subpoenas requiring the

---

[*] Judge Vincent L. Briccetti, of the United States District Court for the Southern District of New York, sitting by designation.

employees to appear before a grand jury. Appellants argue that the district court erred in concluding that the employees are not entitled to diplomatic immunity because they were not registered with the United States Department of State. Appellants further contend that, even if the employees were required to register, that requirement was satisfied when the employees applied for their visas. Because we conclude that the 2009 Bilateral Agreement between the United States and the People's Republic of China (PRC) incorporates a 2003 Diplomatic Note that imposes a registration requirement on construction personnel, which was not fulfilled here, we AFFIRM the order of the district court.

_____

HAROLD J. RUVOLDT, JR. (Cathy A. Fleming & Eric H. Jaso *on the brief*), Fleming Ruvoldt PLLC, New York, NY, *for Appellant*.

ALEXANDER A. SOLOMON, Assistant United States Attorney (Amy Busa, Douglas M. Pravda & Ian Craig Richardson, Assistant United States Attorneys, *on the brief*), *for* Bridget M. Rohde, Acting United States Attorney for the Eastern District of New York, *for Appellee*.

_____

JOHN M. WALKER, JR., *Circuit Judge*:

A Chinese construction company (the Company) and seven of its employees (collectively, Appellants) appeal from an order of the United States District Court for the Eastern District of New York

(Gleeson, *J.*) denying their motion to quash subpoenas requiring the employees to appear before a grand jury. Appellants argue that the district court erred in concluding that the employees are not entitled to diplomatic immunity because they were not registered with the United States Department of State. Appellants further contend that, even if the employees were required to register, that requirement was satisfied when the employees applied for their visas. Because we conclude that the 2009 Bilateral Agreement between the United States and the People's Republic of China (PRC) incorporates a 2003 Diplomatic Note that imposes a registration requirement on construction personnel, which was not fulfilled here, we AFFIRM the order of the district court.

## BACKGROUND

Because this matter relates to a grand jury investigation, we provide an abbreviated version of the facts and only discuss information that will not compromise the integrity of the underlying grand jury investigation.[1] The Company was selected by the PRC to provide construction and related services for Chinese diplomatic

---

[1] On February 16, 2016, we granted Appellants' unopposed motion under Federal Rule of Criminal Procedure 6(e)(6) to seal this appeal in its entirety because it relates to a grand jury investigation. We have determined, however, that we can resolve the question of diplomatic immunity without disclosing information that would contravene the secrecy of the grand jury proceedings mandated by Rule 6(e).

and consular missions to the United States pursuant to a 2009 Bilateral Agreement between the United States and the PRC (Bilateral Agreement).  Under this agreement, the Company brings Chinese nationals into the United States to work on its projects.  The Bilateral Agreement provides for qualified individuals to enter the United States pursuant to A-2 or other appropriate visas issued by the Department of State.

Seven employees of the Company, construction personnel who were attached to a PRC mission, entered the United States on A-2 and G-2 visas.  When these employees were later served with subpoenas requiring them to appear before a grand jury in the U.S. District Court for the Eastern District of New York, Appellants moved, pursuant to 22 U.S.C. § 254(d), to quash these subpoenas on the basis that the employees are entitled to diplomatic immunity. The district court denied that motion and this timely appeal followed.

**DISCUSSION**

We must resolve whether, in order to receive diplomatic immunity, the employees were required to register with the State Department upon being attached to a PRC mission and, if so, whether the employees' visa applications constituted such registration.  Appellants argue that they are entitled to diplomatic immunity because: (1) the Bilateral Agreement does not impose a

registration requirement as a pre-condition to receiving immunity and (2) even if the Bilateral Agreement contains such a requirement, the employees fulfilled it by providing the information required to secure their visas.

We review a district court's denial of a motion to quash a grand jury subpoena for abuse of discretion, *see In re Edelman*, 295 F.3d 171, 173, 175 (2d Cir. 2002), but its interpretation of the terms of a treaty or a diplomatic agreement *de novo*, *see Swarna v. Al-Awadi*, 622 F. 3d 123, 132 (2d Cir. 2010).

**I.     The VCDR, Diplomatic Note, and Bilateral Agreement**

The resolution of this appeal depends on our interpretation of three related documents: (1) the Vienna Convention on Diplomatic Relations (VCDR); (2) a 2003 diplomatic note circulated by the State Department (Diplomatic Note or Note); and (3) the Bilateral Agreement.

The VCDR is an international treaty, signed on April 18, 1961 and effective on April 24, 1964 upon the ratification of twenty-two states.  Now ratified by 191 signatories, the VCDR sets forth the privileges and immunities to which certain diplomatic officials are entitled.  The VCDR specifies that "diplomatic agent[s]" are immune from the criminal, civil, and administrative jurisdiction of the receiving State, with only a few exceptions that are not relevant here. *See* Vienna Convention on Diplomatic Relations, art. 31(1), April 18,

1961, T.I.A.S. No. 7502, 500 U.N.T.S. 95 [hereinafter VCDR]; Multilateral Treaties Deposited with the Secretary-General, https://treaties.un.org/Pages/ParticipationStatus.aspx (last visited Sept. 7, 2017). The purpose of bestowing these diplomatic privileges under the VCDR is "to ensure the efficient performance of the functions of diplomatic missions." VCDR, preamble.

As is relevant to this appeal, the VCDR requires that "[t]he Ministry for Foreign Affairs of the receiving State . . . shall be notified of . . . the appointment of members of the mission [including administrative and technical staff]." *Id.*, art. 10(1)(a). The State Department has a long-standing policy, based on this provision of the VCDR, that all foreign personnel must register with the State Department to be entitled to diplomatic immunity. In 2003, the State Department reminded the Chiefs of Mission of this policy by unilaterally issuing the Diplomatic Note, which reiterated "the requirement, under Article 10 of the VCDR . . . to notify the Department promptly of the arrival or appointment . . . of all members of the missions or consulates." Appellee's App. 9.

Pursuant to the VCDR, the United States and the PRC have executed a series of bilateral agreements permitting each government to conduct construction work on its embassy and consulate facilities located in the other country. The 2009 Bilateral Agreement, which is relevant here, applies to then "existing bilateral

diplomatic and consular locations," including the PRC embassy in Washington, D.C., the United States embassy in Beijing, China, the United States and PRC consulates, and the PRC Permanent Mission to the United Nations located in New York. Appellants' App. 45. The Bilateral Agreement specifies that the United States and the PRC, when engaging in construction at these sites in the other country, may use "project-related personnel and companies of [their] own choosing" and bring their own nationals to serve as "construction personnel." *Id.* at 48. Such personnel "shall be attached . . . to the . . . diplomatic mission as administrative and technical staff" and "shall enjoy the privileges and immunities accorded administrative and technical staff . . . under the VCDR." *Id.* at 49. Although the Bilateral Agreement does not explicitly require that construction personnel register with the State Department to receive immunity, it incorporates "relevant diplomatic notes" regarding issues "not addressed." *Id.* at 55**.**

Here, the district court determined that the Bilateral Agreement, which recognizes immunity for construction personnel, incorporates the Diplomatic Note, which imposes a registration requirement on construction personnel. Appellants take issue with this determination. We therefore address in this opinion: (1) whether, pursuant to the Diplomatic Note, construction personnel must be registered with the State Department before they are

entitled to diplomatic immunity and (2) if so, whether the Bilateral Agreement incorporates the Note, thereby subjecting the Appellants to the registration requirement contained therein.

**II.    Jurisdiction**

Before proceeding to the merits, however, we first must determine whether we have jurisdiction over this matter.  We must consider whether we are deprived of jurisdiction because the denial of Appellants' motion to quash the subpoenas is not a final judgment of the district court from which an appeal can be taken and whether, even if we possess jurisdiction, prudential considerations counsel against exercising it.

Our jurisdiction usually is limited to appeals from final judgments.  *See* 28 U.S.C. § 1291.  A final judgment is a judgment that effectively ends the litigation such that there is nothing left to decide.  An order disposing of a motion to quash a grand jury subpoena generally is not such a final judgment.  *See United States v. Punn*, 737 F.3d 1, 5 (2d Cir. 2013); *United States v. Nixon*, 418 U.S. 683, 690-91 (1974).  There is an exception to the final judgment rule, however, when the order in question meets the requirements of the collateral order doctrine.  Under this exception, an appellate court has jurisdiction over a non-final judgment "if such order (1) 'conclusively determined the disputed question'; (2) 'resolved an important question completely separate from the merits of the

action'; and (3) 'was effectively unreviewable on appeal from a final judgment.'" *In re Air Crash at Belle Harbor*, 490 F.3d 99, 109 (2d Cir. 2007) (citations omitted).

Here, the district court's order denying the Appellants' motion meets all three of these requirements. The district court conclusively determined that the employees were not entitled to diplomatic immunity, an issue that is "important" and "completely separate" from the merits of the case. *See id.* And because the issue of whether these individuals are entitled to immunity determines whether they will be subjected to any further processes in the United States courts, a later recognition of immunity does not mitigate the harm and the order is "effectively unreviewable on appeal from a final judgment." *See id.*; *cf. Mitchell v. Forsyth*, 472 U.S. 511, 525-27 (1985) (the collateral order doctrine exception applies to the defenses of double jeopardy, absolute immunity, and qualified immunity because each possesses the same "essential attribute"—the recipient is guaranteed the right not to be subjected to further court processes—which is lost if appellate review awaits a final judgment). Accordingly, under the collateral order doctrine, we have jurisdiction to review the district court's denial of Appellants' motion to quash the subpoenas.

Although we properly have jurisdiction, Appellants argue that neither we nor the district court should exercise jurisdiction

over this matter due to prudential considerations. Specifically, Appellants contend that this case presents a non-justiciable political question because Section 16 of the Bilateral Agreement specifies that "the Parties shall first address [any] dispute through informal working-level consultations" and that any remaining dispute "shall be resolved through diplomatic channels." Appellants' App. 55. This argument is waived.

The political question doctrine is prudential in that it implicates the exercise of jurisdiction rather than the question of whether jurisdiction exists. *See Baker v. Carr*, 369 U.S. 186, 199-200 (1962). Because "[w]e ordinarily will not consider issues raised for the first time in a reply brief," *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009), a party may waive a challenge to our jurisdiction on the basis of the political question doctrine if the argument is not properly raised before the district court or in its opening brief on appeal, *Hwang Geum Joo v. Japan*, 413 F.3d 45, 49 n.2 (D.C. Cir. 2005) (rejecting party's argument regarding political question doctrine because it was "raised for the first time in the appellants' fourth and final brief on appeal"); *767 Third Ave. Assocs. v. Consulate Gen. of Socialist Fed. Republic of Yugoslavia*, 218 F.3d 152, 162 (2d Cir. 2000) (rejecting party's argument regarding political question doctrine because it was raised for the first time on appeal).

Appellants first raised this argument in supplemental briefing on appeal after filing both their opening and reply briefs.  There is no justifiable excuse for their failure to raise this argument earlier before the district court or this Court.  Appellants try to explain their delay in raising the political question argument by pointing to a series of diplomatic notes recently exchanged between the United States and the PRC that further evince a disagreement as to the interpretation of the Bilateral Agreement, purportedly rendering this dispute a political question pursuant to Section 16.  But the underlying basis of this claim—Section 16 of the Bilateral Agreement—could have supported Appellants' political question argument from the outset of this case.

Having concluded that we properly have jurisdiction and that Appellants have waived their argument that we should not exercise our jurisdiction based on prudential considerations, we now turn to the merits of the appeal.

### III.   Registration of the employees was a pre-condition for diplomatic immunity

The parties agree that the employees were present in the United States pursuant to the Bilateral Agreement and that the Agreement itself does not explicitly contain a registration requirement.  But the Bilateral Agreement also incorporates "relevant diplomatic notes" regarding issues "not addressed." Appellants' App. 55.  The question, therefore, is whether the

Bilateral Agreement imposes a registration requirement as a pre-condition to immunity by incorporating the Diplomatic Note. As a general matter, "[t]he clear import of treaty language controls unless application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories." *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 180 (1982) (citation omitted). In determining the intent of the signatories, we customarily give "great weight" to the Executive Branch's interpretation of such a treaty. *See Swarna*, 622 F.3d at 133.

Appellants argue that the clear import of the Bilateral Agreement and the Diplomatic Note is that construction personnel are not required to register in order to receive immunity because: (1) the Note does not condition immunity on the registration of any foreign personnel, including construction personnel and (2) even if it does, the Note cannot implicitly and unilaterally amend the Bilateral Agreement. We address each of these arguments in turn.

### A. Construction personnel must register to receive immunity under the Diplomatic Note

Appellants contend that the Diplomatic Note does not require construction personnel to formally register with the State Department for two reasons: (1) the Note does not explicitly require any foreign personnel to register before they are entitled to

immunity and (2) construction personnel do not fall within the scope of the Note. Neither argument has merit.

First, Appellants correctly assert that the Diplomatic Note does not explicitly make immunity conditional upon registration. A reasonable reading of the Note, however, leads us to conclude that registration is required for foreign personnel to possess diplomatic immunity. The Note specifies, for instance, that "notif[ication]" of the State Department is a "requirement[] under Article 10 of the [VCDR]." Appellee's App. 9 (reminding all Chiefs of Mission "of the *requirement*, under Article 10 of the [VCDR] to notify the Department promptly of the arrival or appointment . . . of all members of the missions." (emphasis added)). The Note further elaborates that these reporting requirements are "*essential to continued enjoyment* by members of the missions . . . of the rights, privileges and immunities to which they may be entitled." *Id.* at 10 (emphasis added). These provisions strongly suggest that foreign personnel receive immunity only after they have been officially attached to a mission and the receiving state has been duly informed.

The Note is wholly consistent with both the text and purpose of the VCDR. Article 10 of the VCDR explicitly requires notification of the receiving state upon the attachment of diplomatic personnel: "[t]he Ministry for Foreign Affairs of the receiving State, or such

other ministry as may be agreed, *shall be notified* of . . . the appointment of members of the mission."   VCDR, art. 10(1)(a) (emphasis added).  The VCDR's preamble sheds additional light on the reason for this notification requirement: "the purpose of [diplomatic] privileges and immunities is . . . to ensure the efficient performance of the functions of diplomatic missions."  *Id.*, preamble. If the receiving state were unaware of which personnel are entitled to immunity, and a determination could be made only after a lengthy judicial inquiry, the efficient performance of a diplomatic mission's functions would be frustrated.

Second, the Appellants argue that, even if the Diplomatic Note requires registration as a condition for receiving immunity, the Diplomatic Note does not apply to construction personnel.  This argument, however, is contrary to the express language of the relevant documents.  The VCDR and the Note both specify that the registration requirement applies to members of a country's mission, *id.*, art. 1(c), 10(1)(a); Appellee's App. 5-6, and the VCDR further defines these members as including "administrative and technical staff," VCDR, art. 1(c).  The Bilateral Agreement explicitly mandates that construction personnel are attached to the "diplomatic mission as administrative and technical staff."  Appellants' App. 49.  The construction personnel described in the Bilateral Agreement plainly fall within the scope of the VCDR and the Diplomatic Note.  Indeed,

the very purpose of the Bilateral Agreement is to provide construction personnel the same privileges and rights as those afforded to all other mission personnel "in accordance" with the VCDR. *Id.* at 44. Carried to its logical end, Appellants' argument would seem to require us to hold that construction personnel are entitled to *greater* rights and privileges than other mission personnel, *i.e.*, diplomatic immunity without satisfying the registration requirement.

### B. The Bilateral Agreement incorporates the Diplomatic Note

Appellants next contend that the Diplomatic Note should not have any bearing on our interpretation of the Bilateral Agreement because, if it did, it would "implicitly" or unilaterally modify the Agreement contrary to the Agreement's own terms. The Bilateral Agreement, however, incorporates "relevant diplomatic notes" that regard matters "not addressed" in the Bilateral Agreement. Appellants' App. 55. Such notes, therefore, do not modify the agreement; they are part of it. The Diplomatic Note falls within this category: the parties do not dispute that (1) registration is not addressed in the Bilateral Agreement; and (2) the subject of the Diplomatic Note—a reminder of the registration requirement under the VCDR—is relevant to the Bilateral Agreement, which references the rights afforded to construction personnel under the VCDR.

Appellants contend, however, that the Diplomatic Note is a unilateral attempt to amend the Bilateral Agreement and that Section 16.2 of the Bilateral Agreement permits amendments only upon mutual agreement. Section 16.2 does require that certain amendments be made pursuant to mutual agreement: "If any issue is not addressed in [the Bilateral Agreement], the Parties shall refer to their past agreements and relevant diplomatic notes for resolution. Any issue not addressed in these documents shall be addressed through mutual consultation between the Parties." *Id.* As we have noted, however, Section 16.2 makes clear that the Diplomatic Note does not alter the Bilateral Agreement; it is part of it. Mutual consultation is required only if there are no relevant diplomatic notes to be incorporated. That is not the case here.

Although Section 16.2 provides otherwise, Appellants also suggest that a unilateral diplomatic note cannot bear upon the requirements of a mutual agreement because it is unilateral. Appellants are incorrect, *see, e.g.*, *United States v. Kostadinov*, 734 F.2d 905, 912-13 (2d Cir. 1984) (acknowledging the validity of unilateral diplomatic notes sent to Chiefs of Mission specifying that "all mission personnel entitled to diplomatic privileges and immunities [pursuant to the VCDR] . . . must reside in the Washington area"), particularly where, as here, the mutual agreement explicitly

provides for the incorporation of documents that may be issued unilaterally.

**IV.    The employees' visa applications did not satisfy the registration requirement**

Appellants further argue that, even if registration were a precondition for immunity, this condition was satisfied when the employees submitted their A-2 and G-2 visa applications.   We disagree.

A-2 and G-2 visas are issued to foreign personnel or their immediate family members who intend to engage solely in official activities for the foreign government while in the United States, *see* 22 C.F.R. §§ 41.12, 41.22(a), or to enter or transit the United States in pursuance of official duties related to a qualifying international organization, *see id.* §§ 41.12, 41.24(b)(1).   The State Department has specified, however, that such visas are "issued to a broad range of persons," including those who "enjoy no privileges and immunities in the United States."   Appellants' App. 88.   Because these visas can be issued to individuals who are not entitled to diplomatic immunity, they do not necessarily fulfill the purpose that underlies registration—to inform the State Department as to the identities of foreign personnel who should be entitled to diplomatic immunity in the United States.

Indeed, in the instant case, the State Department certified that the employees were not formally registered with the State

Department, even though they had applied for and received these visas. Such a certification is generally conclusive where, as here, the State Department's interpretation of when diplomatic immunity applies under the relevant agreements is reasonable. *See In re Baiz*, 135 U.S. 403, 421 (1890) ("[T]he certificate of the secretary of state . . . is the best evidence to prove the diplomatic character of a person."); *United States v. Al-Hamdi*, 356 F.3d 564, 573 (4th Cir. 2004) ("[W]e hold that the State Department's certification, which is based upon a reasonable interpretation of the Vienna Convention, is conclusive evidence as to the diplomatic status of an individual." (citing *United States v. Kostadinov*, 734 F.2d 905 (2d Cir. 1984))); *Abdulaziz v. Metropolitan Dade Cnty.,* 741 F.2d 1328, 1331 (11th Cir. 1984) ("[C]ourts have generally accepted as conclusive the views of the State Department as to the fact of diplomatic status." (citing *Carrera v. Carrera,* 174 F.2d 496, 497 (D.C. Cir. 1949))).

Before the district court, the State Department certified that "[p]ersons enjoying immunity [under the Bilateral Agreement] would be reflected in the records of the Office of Foreign Missions, United States Department of State." Appellee's App. 13. The State Department further certified that the construction personnel at issue in this case either "[were] never registered with the U.S. Department of State," or their registration was terminated prior to the issuance of the grand jury subpoenas. *Id.* at 13-15. We accept the State

Department's certification that the Appellants did not satisfy the registration requirement, notwithstanding their visa applications. This affords appropriate deference to the Executive Branch in the realm of foreign relations, particularly where, as here, the Executive Branch's interpretation of the relevant agreements is reasonable, consistent with the apparent purposes underlying the agreements, and essential to the State Department's ability to perform its duties.

**CONCLUSION**

In sum, because we conclude that the Executive Branch reasonably interpreted the relevant agreements as requiring construction personnel to register with the State Department before receiving immunity and because that condition was not satisfied here, the Appellants are not entitled to diplomatic immunity. We therefore AFFIRM the district court's order denying the Appellants' motion to quash their subpoenas.